COMMONWEALTH *vs.* JOHN DOE.[1]

Suffolk. February 8, 1995. - April 19, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Judge. Practice, Criminal*, Report. *Criminal Records. Constitutional Law*, Access to criminal records.

A District Court judge sitting in a nonjury criminal session was authorized to report a case to the Appeals Court pursuant to Mass. R. Crim. P. 34, only in cases commenced after the effective date (January 1, 1994) of St. 1992, c. 379, § 139, amending G. L. c. 218, § 26A. [145-146]

Discussion of the provisions of G. L. c. 276, §§ 100A-100C, relative to the sealing of records of criminal cases, and decisions thereunder, and in particular, *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497 (1st Cir. 1989). [146-149]

This court expressed approval of the two-stage procedure for hearing a petition to seal a criminal record brought under G. L. c. 276, § 100C, second par., set forth in *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497 (1st Cir. 1989), and set forth the applicable standards for a judge to make a determination whether "substantial justice" would be served by granting the petition. [149-153]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on February 1, 1993.

After entry of a nolle prosequi, a petition to seal the record was considered by *Peter W. Agnes, Jr.*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*D. Lloyd MacDonald* (*Eva M. Ciko* with him) for the defendant.

---

[1] We allowed a motion by the defendant to amend the case caption with a pseudonym.

*Ralph C. Martin, II*, District Attorney, & *Jill P. Furman*, Assistant District Attorney, for the Commonwealth, submitted a brief.

*Scott Harshbarger*, Attorney General, & *William J. Duensing*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

GREANEY, J. A judge in the District Court sought to report to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), five questions concerning a petition (which the judge had denied) brought by the defendant to seal the record in criminal cases pursuant to the provisions of G. L. c. 276, § 100C, second par. (1992 ed.).[2] The charges against the defendant had been resolved by the prosecution's entry of a nolle prosequi. We allowed the defendant's application for direct appellate review. We conclude that the judge lacked authority to make a report and order the report discharged. The issues raised by the defendant's petition to seal, however, are important, will arise again, and have general application to the work of the trial court. Accordingly, we shall exercise our discretion to comment on the issues in order to promote the proper administration of justice. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

The background of the case is set forth in the judge's report as follows. On February 1, 1993, the defendant was arraigned in the Roxbury District Court on a complaint charging rape and three other serious sexual offenses. On February 16, 1993, the office of the district attorney for the Suffolk

---

[2]This provision reads as follows:

"In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, except in cases in which an order of probation has been terminated, and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files. The clerk shall forthwith notify the commissioner of probation and the probation officer of the courts in which the proceedings occurred or were initiated who shall likewise seal the records of the proceedings in their files."

district entered a nolle prosequi as to all the charges. See Mass. R. Crim. P. 16 (a), 378 Mass. 885 (1979). The reason given for terminating the prosecution of the defendant was "that, upon review of the evidence currently available, it appears that the ends of justice would not be served by the prosecution of this case." On May 6, 1993, the defendant filed a petition pursuant to G. L. c. 276, § 100C, second par.; see note 1, *supra*; accompanied by his affidavit and an affidavit of his counsel, to seal the record of the case.

The defendant's affidavit indicates that he was then an eighteen year old Boston University freshman who had never been arrested or involved with the criminal justice system until February 1, 1993, when he was arrested and charged with rape and the other offenses following an incident in which he had sexual intercourse with a female student who also attended Boston University. The defendant maintained at the time of his arrest, and asserts in his affidavit, that the intercourse was consensual. His affidavit adds that there were witnesses to the incident ("both men and women"), and that "[w]hen the District Attorney — at my lawyer's request — interviewed the witnesses (including the girl who made the accusations), it was determined that the alleged victim's story was unsubstantiated." The defendant further states in his affidavit that Boston University investigated the incident and decided "to take no action against me on account of the evidence . . . [and] at the conclusion of the University's investigation, the person who had originally accused me, herself, chose not to pursue the allegations at the University or elsewhere."

The defendant's affidavit also contains information supportive of his good character, his high academic standing, and his ambition to secure employment in the business field while in school, to work toward a master's degree in business administration, and someday to own his own business. The defendant also expresses concern about the future conse-

quences of his arrest record. He states:

> "My greatest fear relating to the record of my arrest
> is that if it remains unsealed it will prejudice my oppor-
> tunity to secure employment and pursue further educa-
> tional degrees. In particular, the publicly accessible rec-
> ord would hurt me if I were to try to work for the
> government or otherwise be involved in sensitive posi-
> tions requiring a security clearance or other special
> standards of conduct and trustworthiness. To be pre-
> vented from or hindered in being able to do that seems
> unjust to me because both the District Attorney and the
> University concluded that the allegations underlying the
> rape charge against me were unsubstantiated."

The affidavit of defense counsel indicates that the original
prosecutor in the case, when informed of the defendant's pe-
tition to seal, stated that the office of the district attorney
had no objection to its allowance. This view was reiterated on
July 1, 1993, by the prosecutor who was the only person
(other than defense counsel) to appear at the hearing on the
petition and express an opinion. (Notice of the hearing had
been previously given to the Commissioner of Probation
[commissioner], published in Massachusetts Lawyers Weekly
and posted in the clerk-magistrate's office of the Roxbury
District Court). On August 18, 1993, the judge denied the
petition to seal and made his report. As a basis for the de-
nial, the judge stated that the defendant "has not demon-
strated anything more than a potential for harm to his repu-
tation, employment prospects or privacy, and the mere
assertion of a general interest in privacy and reputation is not
sufficient to overcome the presumption of openness [of crimi-
nal records] under the First Amendment."

1. As has been indicated, all the relevant events of this
case (from the filing of the complaint to the filing and dispo-
sition of the petition to seal) occurred in 1993. During that
time, rule 34, allowed only for reports of cases in the Supe-
rior Court and in the jury sessions of the District Court. See

*Gordon* v. *Fay*, 382 Mass. 64, 66 & n.4 (1980). The defendant's case was in a nonjury session of the Roxbury District Court. The judge could not report the case under rule 34, and the report is not properly before us.[3] See *Doe* v. *Doe*, 378 Mass. 202, 203 (1979).

2. The judge prepared a thorough report which carefully examined the current state of the law with respect to the sealing provision contained in G. L. c. 276, § 100C, second par. He properly recognized that important issues exist with regard to the proper application and scope of this sealing provision. As has been indicated, we deem it appropriate to comment on the issues. We see no need specifically to respond to each of the five questions posed in the report, choosing instead to discuss the issues in a general way.

Section 100C of G. L. c. 276 contains two provisions. The first paragraph directs the commissioner and other court officers to seal the "records" of criminal cases in which a conviction has not been obtained because the defendant was found not guilty, the grand jury failed to indict, or the judge made a finding of no probable cause.[4] Sealing under this provision was to occur automatically on the completion of a criminal case ending in one of the enumerated dispositions

---

[3]By St. 1992, c. 379, § 139 (codified at G. L. c. 218, § 26A), the Legislature authorized District Court judges sitting in nonjury criminal sessions to exercise "all of the powers and duties which a justice sitting in the superior court department has . . . including the power to report questions of law to the appeals court." This amendment, however, was effective only for those cases commenced (by arrest or the issuance of a complaint) on or after January 1, 1994. St. 1993, c. 12, § 9.

[4]The first paragraph of § 100C reads as follows:

"In any criminal case wherein the defendant has been found not guilty by the court or jury, or a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court, the commissioner of probation shall seal said court appearance and disposition recorded in his files and the clerk and the probation officers of the courts in which the proceedings occurred or were initiated shall likewise seal the records of the proceedings in their files. The provisions of this paragraph shall not apply if the defendant makes a written request to the commissioner not to seal the records of the proceedings."

regardless of the circumstances surrounding a particular case. The second paragraph of § 100C, which is at issue in this case, applies only to those criminal cases in which there has been no prosecution or the court has entered a dismissal. See note 1, *supra*. In contrast to the first paragraph, the second paragraph authorizes the sealing of a defendant's records only when "it appears to the court that substantial justice would best be served." The term "substantial justice" is not defined in the statute.

The sealing records statutes, G. L. c. 276, §§ 100A-100C (1992 ed.), seek to shield from public view the facts surrounding certain criminal cases, see *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. 475, 479 (1978), in order "to protect individuals from unnecessary and overbroad dissemination of criminal record information." *Commonwealth* v. *Vickey*, 381 Mass. 762, 765 (1980). The statute's protection "ensur[es] the confidentiality of a person's record." *Commonwealth* v. *Balboni*, 419 Mass. 42, 45 (1994).

This interest in confidentiality has the potential for conflicting with the right of access to records submitted in connection with criminal proceedings guaranteed by the First Amendment to the United States Constitution. See *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984). In *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497 (1st Cir. 1989), the United States Court of Appeals for the First Circuit considered the constitutionality of § 100C in a lawsuit brought by the Globe Newspaper Company (Boston Globe) claiming that it had a constitutional right of access to certain court records which had been impermissibly burdened by the statutory scheme governing sealing. The case involved two occasions when Boston Globe reporters were denied access to criminal records. On the first occasion, the Boston Globe reporters sought the records to investigate a report that a trial court judge had initially found a police officer guilty of possession of cocaine, but had reversed his finding after being informed that a conviction might cause the officer to lose his job. On the second occasion, the Boston Globe sought access to records for its "spotlight team" in connection with crimi-

nal cases in Suffolk County involving sexual offenses committed against juveniles.

The court concluded that, under the First Amendment, the press and the public possessed a constitutional right of access to judicial records which could be overcome only by a showing of a compelling governmental interest, and on terms that represent the least restrictive alternative. *Id.* at 502-507. The court "agree[d] that preventing the public disclosure of records that defendants do not want released, and that the state is not required to release under the First Amendment, is a compelling interest given the harm that disclosure of such records can cause." *Id.* at 506. Nonetheless, the court concluded that the blanket restriction contained in the first paragraph of § 100C on access to records of criminal cases ending in a finding of not guilty, or a finding of no probable cause, was not the least restrictive means available for protecting that interest, and, therefore, was unconstitutional. *Id.* at 510-511.[5]

The Court of Appeals also declared that the application of the compelling interest and less restrictive means test applied to the sealing provisions in the second paragraph of § 100C. *Id.* at 510. As to this provision, it was stated, "The Commonwealth . . . may not rely on § 100C [second par.] to withhold the records of cases ending in a dismissal and nolle prosequi unless it can demonstrate that such records were sealed only after a court [has] made specific, on the record findings that sealing was necessary to effectuate a compelling governmental interest." *Id.* at 511.[6]

---

[5]That the portion of the first paragraph of § 100C requiring the automatic sealing of the records of cases where a grand jury have found no bill was held to be constitutional in view of the historic secrecy of grand jury proceedings. *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497, 509-510 (1st Cir. 1989).

[6]Subsequent to the *Pokaski* case, the United States District Court for the District of Massachusetts held that G. L. c. 6, § 172 (1992 ed.), part of the Criminal Offender Records Information System (CORI), violated the First Amendment to the United States Constitution insofar as it denied public access to court-maintained alphabetical indices of defendants in closed criminal cases without an individualized judicial determination

With respect to the showing required in a particular case, it was stressed in the *Pokaski* decision that the sealing of the court record of a criminal defendant should occur only in exceptional cases. It was noted in the decision that "because both the proceedings and case files already have been publicly accessible, defendants must convince a court or administrative body that their privacy rights have not been lost irretrievably." *Id.* at 506 n.17. Moreover, "[r]ecords cannot be sealed on the basis of general reputation and privacy interests." *Id.* at 507 n.18. A defendant must show that specific harm is threatened by the continued existence of the record. *Id.*

Where then does all this leave § 100C, second par.? We think the following can be said about the operation of the statute in light of the *Pokaski* decision.

(a) In the *Pokaski* decision, the Court of Appeals suggested a two-stage proceeding for hearing petitions to seal under § 100C, second par. At the first, informal stage, which would occur either at the end of the hearing in which the case was disposed of, *id.* at 507, or at such other time as the defendant petitions for sealing, *id.* at 507-508, a preliminary hearing would be held to determine whether the defendant has made out a prima facie case in favor of sealing. If the defendant fails to make a prima facie showing at this preliminary hearing, the petition to seal should be denied summarily.[7] Only if the defendant succeeded at this stage would

---

that a particular defendant's name must be sealed or impounded to serve a compelling State interest. *Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89, 100-101 (D. Mass. 1993). This decision also invalidated a trial court administrative directive that was promulgated in response to CORI and held CORI violative of the First Amendment insofar as it imposed a sanction for the communication of criminal offender record information contained in a judicial record open to the public at the time of the communication of such information. *Id.* at 101.

[7] The court in *Pokaski* anticipated that the proportion of cases in which a defendant successfully made out a prima facie case would be small. "[I]n all but a few cases, the defendant's request would be denied summarily." *Globe Newspaper Co.* v. *Pokaski, supra* at 507-508. We note that only now, some six years after issuance of the *Pokaski* decision, have we been required to consider the effect of that decision on § 100C. It

a more extensive hearing be necessary. For a preliminary hearing occurring at the conclusion of the public hearing in which the criminal case was disposed of, no additional notice would be necessary. The underlying hearing, from which the records arose, would be accessible, and could be attended by any member of the public or press interested in observing the proceedings. The defendant's petition to seal the record would simply be a portion of the ongoing proceeding. If the preliminary hearing was held some time after the underlying case has been disposed of, notice may be provided by means of an entry on the public docket sheets, as is normal procedure.

If the defendant succeeds in making a prima facie showing that sealing is appropriate, a more extensive hearing, with notice, would be necessary. At this second stage, at which arguments for and against sealing would be made, notice should be afforded by means of posting in a conspicuous place at the court for an adequate period sufficient (we suggest a minimum of seven days) "to give the public and press an opportunity to intervene and present their objections to the court." *In re Knight Publishing Co.,* 743 F.2d. 231, 234 (4th Cir. 1984) (closure of criminal proceeding). As far as the media are concerned, while members of the press cannot be expected to be present continuously in all court sessions, press representatives are regularly present in, and are familiar with, the clerks' offices and the courthouses of the Commonwealth. Additionally, notice of a second stage hearing should be given to the prosecutor, who should be advised to inform the victim of the scheduled hearing and indicate to the victim that he or she may appear and be heard, to the Department of Probation, and to any other party deemed to have an interest in the case.[8]

---

seems likely that, in fact, only a small number of defendants seek the protection of this legislation. It is possible that most of these few cases will warrant more than a summary dismissal.

[8]It would not be necessary, as was done in this case, to give newspaper publication notice or to post a special notice in the clerk's office.

(b) The sealing provisions of § 100C, second par., express the State's interest in preserving confidentiality and avoiding harm that may arise from the unnecessary maintenance and dissemination of criminal records. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 658-660 (1978). Even though a case has not been prosecuted, information within a criminal record may remain useful,[9] and, of course, is presumed open to the public and the media.

To succeed on a petition to seal under § 100C, second par., a defendant must show that the interests of confidentiality and avoiding harm have specific application to him or her. The "substantial justice" requirement in § 100C, second par., will not be met unless it is demonstrated, first at the preliminary hearing and, if the matter proceeds that far, at the final hearing, that the value of sealing to the defendant clearly outweighs the constitutionally-based value of the record remaining open to society. See *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 509 (1984).

The judge should consider all relevant information in deciding whether substantial justice would be served by sealing. It would clearly be necessary to know the reason for the nolle prosequi or dismissal. The defendant's case for confidentiality becomes stronger if the dropping of the charge is premised on a "mistake" in bringing it (for example, defendant was misidentified or police acquired credible information exonerating defendant), see *United States* v. *Johnson*, 714 F. Supp. 522, 524-525 (S.D. Fla. 1989), and it is correspondingly weakened if the prosecutor is simply unable to prove the charge (for example, if lack of prosecution stems from refusal of victim or essential witness to cooperate without indication that charge was wrongly brought in first place). In

---

[9]See, e.g., *Commonwealth* v. *Willis*, 415 Mass. 814 (1993) (police officer's knowledge that suspect had been arrested for armed robbery, even though charges were dismissed, provided reasonable basis for police concerns for safety and for extra precautions in making investigative stop). Records sealed pursuant to G. L. c. 276, § 100C, second par., remain accessible to law enforcement personnel and the courts.

this respect, the fact that law enforcement officers had probable cause to believe that the defendant acted in a particularly unlawful manner would have a direct bearing on the value of the information and on the defendant's claim that he may suffer an unfair stigma from the information remaining accessible. A reasoned objection at any time by the prosecutor, victim, probation department, police, or the media would pose a very serious obstacle to the petition.

In connection with the "substantial justice" requirement, the defendant would have to demonstrate that he or she risks suffering specific harm if the record is not sealed. We do not think, however, that the actual likelihood of immediate harm is a necessary component of a defendant's proof, if the factors discussed above strongly favor sealing. The risk of harm posed by the existence of an arrest record, notwithstanding the ultimate disposition of the case, has long been recognized by this court and other courts. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, *supra*. See also *United States* v. *Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977), cert. denied, 435 U.S. 907 (1978); *Menard* v. *Mitchell*, 430 F.2d 486, 490 (D.C. Cir. 1970) ("Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved"). With the advent of computerization and the increased accessibility that it provides, the risk of harm from an arrest record has increased substantially. A judge weighing a petition under § 100C, second par., may consider the position of the petitioner and whether, in view of that position, it is substantially probable that future opportunities are likely to be affected adversely by the existence of an arrest record.

(c) As has been mentioned, if the judge decides to allow a petition to seal, there must be specific findings on the record

setting forth the interests considered by the judge and the reasons for the order directing that such sealing occur.

3. In this case, the judge ruled correctly that the defendant had not made out a case for sealing. The reasons for the nolle prosequi do not adequately appear in the record, beyond the general statement that the "victim's story was unsubstantiated." We think, however, that the judge would be warranted in concluding, as to the risk of harm from the arrest record, that no more was shown than a general threat to reputation or privacy.

*Report discharged.*