Garsh, J.
Plaintiffs challenge the constitutionality of Section seven of St. 1992, c. 188, An Act Establishing a Statewide Registration of Domestic Violence Offenses. Section seven directs the Commissioner of Probation to develop and implement a statewide domestic violence record keeping system, which shall include a computerized record of the issuance of or violations of any restraining orders issued pursuant to G.L.c. 209A as well as certain other designated laws (hereinafter referred to as “the Registry”). Section seven further provides that the information contained in the Registry “shall be made available to law'enforcement agencies through the criminal justice information system maintained by the executive office of public safety” (“CJIS”).
Plaintiffs allege that maintaining records of the fact that c. 209A orders issued against them and the possibility that such records will be made available to others through CJIS is damaging because it labels them as “dangerous.” They claim that the statute, in effect, turns civil records into criminal records or otherwise into records that they have been found “to have engaged in bad acts.” Plaintiffs claim that Section seven facially violates their constitutional rights to due process of law and, alternatively, that it is unconstitutional as applied. Plaintiffs now seek a preliminary injunction prohibiting the defendants from disseminating to any public or private person or agency the fact that abuse prevention orders ever were issued against them. For the reasons set forth below, their motion for a preliminary injunction is denied.
By way of background, on October 24, 1995, the plaintiffs’ seventeen year old sister reported to the Fall River Police Department that she had been assaulted by the plaintiffs. Through the Emergency Judicial Response System, G.L. 209A, §5, she sought and obtained an emergency restraining order against her sisters. The following day, the plaintiffs were arraigned on criminal assault and battery charges. On that same day, at the request of the complainant, the Fall River District Court, having found a substantial likelihood of immediate danger of abuse, issued temporary restraining orders against the plaintiffs pursuant to G.L.c. 209A, §4. The orders were to expire on November 1, 1995. On October 25, 1995, the District Court refused plaintiffs’ counsel’s request that there be a full trial that day on the merits. On November 1, 1995, the plaintiffs presented motions to dismiss the c. 209A complaints on the grounds that the complainant lacked legal capacity to initiate them due to her minority. Those motions were supported by the plaintiffs’ parents, who are also the complainant’s parents. The plaintiffs opposed appointment of a guardian ad litem to represent the interests of the minor complainant. With the agreement of the plaintiffs, the District Court continued the evidentiary hearing to November 10, 1995. At that time, the Court denied the motions to dismiss, ruling that a minor child may bring an action under c. 209A in her own right. The District Court did not appoint a guardian ad litem to represent the complainant’s interests at the hearing. There was a trial during which the complainant was not represented by counsel. The plaintiffs were represented by counsel. Five witnesses testified. Following the hearing, the court declined to issue new orders, allowing the orders to lapse. The court explained its reasons as follows:
I have listened to the witnesses ... I have found both Danielle and Michelle Souza to be extremely impressive in their demeanor and in their accounts of this case. Admittedly, there was some degree of physical touching. It is not my finding that such touching, which I find to have occurred ... to fall within the definition of “abuse” . . . and even if it technically did, the act says that I have discretion ... I, in my discretion, do not issue orders.
Restraining order data is transmitted electronically from the office of the Commissioner of Probation. It is, in turn, made accessible to law enforcement agencies by electronic disseminiation through CJIS, which is administered by the Criminal History Systems Board (“Board”). The information in the Registry consists of the defendant’s name, address and identifying data, and information regarding any restraining order that issued against that defendant, including the name of the complainant, the court of issuance, the docket number, the statute under which it was issued, the specific terms of the order, the date of issuance and the date of expiration, as well as its status as “open” or “closed.” There is no allegation that any of the data in the Registry with respect to either plaintiff is incor *484 rect. The Registry reflects entry of the c. 209A order on October 25, 1995 and expiration on November 10, 1995, and that the status is “closed.”
In determining whether to grant a preliminary injunction, this court applies a balancing test. First, the court must evaluate whether the plaintiffs have demonstrated that, without the relief requested, they would suffer irreparable harm. Commonwealth v. Mass. CRINC, 392 Mass. 79, 87 (1984). The plaintiffs also must show a likelihood that they will prevail on the merits. Id. Only if this court is convinced that failure to issue the injunction would subject the moving parties to a “substantial risk of irreparable harm,” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980), is there a need to balance that risk against the risk of irreparable harm which granting the injunction would create for the opposing parties. Because this litigation is not simply a dispute between private parties, it would also be appropriate to consider the risk of harm to the public interest should the injunction be allowed. Commonwealth v. Mass. CRINC, 392 Mass. at 89.
Irreparable Harm
Plaintiffs do not make it over the first hurdle as they have not demonstrated a substantial risk of irreparable harm. The uncontradicted affidavit of Craig D. Burlin-game (“Burlingame”), Executive Director of the Board, states that access to the restraining order data through CJIS is strictly limited to authorized individuals of certified criminal justice-agencies, who may access restraining order data only for legitimate criminal justice purposes, and authorized individuals of the Massachusetts Department of Social Services,[3] who may access such data only for legitimate and approved purposes related to the protection of children and not for obtaining information regarding current or prospective employees. A record is maintained of those individuals accessing such data and authorized users are subject to regular audit by the Board in order to ensure that access is restricted to legitimate and approved purposes. According to Burlingame, non-criminal justice individuals or agencies, including those who may have otherwise been certified by the Board to receive criminal record information, are not allowed access to restraining order data, and public access to restraining order data in the Registry is strictly prohibited.
The statute at issue does not purport to provide the public with access to the Registry. Regulations promulgated by the Board provide that computer terminal access to data contained on CJIS “shall be used by law enforcement or criminal justice personnel and otherwise authorized persons only for a criminal justice purpose in the performance of their official duties and responsibilities. Such CJIS data shall include . . . the Court Activity Record Information file (including the civil restraining order file) . . . All such personnel or authorized persons shall be subject to a criminal record background check and will sign an agreement of non-disclosure on forms provided by the Criminal History Systems Board.” 803 C.M.R. §3.05. The plaintiffs’ concern that the Board might disseminate Registry data to the public under the aegis of the Criminal History Record Information Act, G.L.c. 6, §172, appears unwarranted. That statute deals with the dissemination of “criminal offender record information,” as that term is defined in G.L.c. 6, §167.[4] That definition is not broad enough to encompass the civil restraining order data contained in the Registry. Plaintiffs rely upon Commonwealth v. Doe, 420 Mass. 142 (1995), for the proposition that the mere existence of the Registry constitutes irreparable harm. That case is inapposite because it dealt with judicial records to which the public has a presumptive right of access.
Plaintiffs’ worry that the Registry data might be misused by a judge in some future c. 209A or c. 276, §58A hearing is nothing more than speculation about the possibility of harm, not a showing that the plaintiffs would suffer irreparable harm in the absence of injunc-tive relief. Section 7 of St. 1992, c. 188 provides that the information contained in the Registry “shall be made available to judges considering petitions or complaints pursuant to . . . chapter two hundred and nine A . . .” G.L.c. 209A, §7, in turn, provides that when considering a c. 209A complaint, “a judge shall cause a search to be made of the records contained within the statewide domestic violence record keeping system maintained by the office of the commissioner of probation and shall review the resulting data to determine whether the named defendant has a civil or criminal record involving domestic or other violence.” G.L.c. 276, §58A allows the Commonwealth, under certain situations, to move, based on dangerousness, for an order of pretrial detention. A person may be detained under that statute only if the judge finds “by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community.” G.L.c. 276, §58A(3). In determining whether there are conditions of release that will reasonably assure the safety of any other individual or the community, the judge “shall, on the basis of any information which he can reasonably obtain, take into account” a host of factors, including “whether the person has any history of orders issued against him pursuant to” c. 209A. G.L.c. 276, §58A(5).
Plaintiffs do not argue that there is likelihood that, before the termination of this litigation, they will again be before a court as defendants in another c. 209A hearing or as defendants in a Section 58A pretrial detention hearing. Moreover, should either of these events occur, there is no reason to assume that the presiding judge will make unconstitutional use of the Registry data pertaining to the plaintiffs. Injunctions are issued to “ ‘prevent existing or presently threatened injuries’ and ‘will not be granted against something merely feared as liable to occur at some indefinite time or in the future.’ . . . The injury complained of must be of such imminence that there is a ‘clear and present’ need for equitable relief to prevent irreparable harm.” Ashland Oil, Inc. v. F.T.C., 409 F.Supp. 297, *485 307 (D.D.C. 1976) (emphasis in original), quoting Connecticut v. Massachusetts, 282 U.S. 660, 674 (1930).
Nothing in St. 1992, c. 188, §7, itself, appears to label the plaintiffs as “dangerous,” creates a criminal record, or constitutes a record that the plaintiffs have been judicially determined to have engaged in violent bad acts. It is also within the realm of conjecture to assume that, prior to the determination of this suit, any of the narrow class of persons entitled to access to the Registry will seek information pertaining to the plaintiffs or that, if they did, any cognizable harm would flow from such access.
Finally, plaintiffs point to no irreparable harm that they have suffered during the eight months that have passed since their names were included in the Registry. There appears to be no reason that this action cannot be expeditiously resolved on the merits. Discovery, if any is required, is likely to be minimal. “Irreparable harm is absent if trial on the merits can be conducted before the injury occurs.” Packaging Industries Group, Inc., 380 Mass. at 617 n. 11.
Probability of Success on the Merits
Plaintiffs also fail to carry their burden of showing a likelihood that they will prevail on the merits of their claim at trial. It is not likely that the plaintiffs will be able to prove that including restraining orders which were not extended after an evidentiary hearing in the Registry constitutes an “arbitrary, capricious and unfair interpretation” of the statute. St. 1992, c. 188, §7 requires the Registry to include “any” c. 209A order. “Any” order presumably includes expired orders.
The due process claim based on stigma does not appear likely to be successful. Reputational injury, without more, generally is insufficient to invoke due process guarantees. Paul v. Davis, 424 U.S. 693, 701 (1976).
Even if there were a constitutionally protected interest at stake, it does not follow that the statute is unconstitutional. “Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm ‘good name, reputation, honor, or integrity.’ ” Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1101 (9th Cir. 1981) (quoting Bishop v. Wood, 426 U.S. 341, 348 (1976)), cert. denied, 455 U.S. 948 (1982). See also Grant v. Police Commissioner of Boston, 7 Mass.App.Ct. 296, 299 (1979) (“Not only must there be a creation of false information..., there also must be a dissemination of that information . . . before there is a deprivation of . . . liberty interests . . .”); Hodge v. Jones, 31 F.3d 157, 165 (4th Cir. 1994) (computerized database, that is not accessible to the general public and that contains records of child abuse investigations of parents which have been classified as “unsubstantiated” and “ruled out,” does not create a stigma or implicate a constitutionally protected right to privacy). While it is, of course, possible that information in the Registry will be misused, despite the statutory and regulatory safeguards, “[t]he tangential possibility of public disclosure . . . through such theoretical means as negligent or improperly-motivated state employees or fortuitous computer hackers, cannot by itself implicate a constitutional privacy right.” Hodge v. Jones, 31 F.3d at 166. See also Whalen v. Roe, 429 U.S. 589, 600-02 (1977).
To the extent that the plaintiffs’ stigma claim is based upon the assumption that St. 1992, c. 188, §7 labels them as “dangerous,” creates a criminal record, or constitutes a record that they have been judicially determined to have engaged in violent bad acts, plaintiffs are unlikely to be successful because the statute does not appear to do any of these things. As for the proposition that confidential maintenance of a registry of non-extended c. 209A orders is unconstitutional, that would appear to “expand penumbral privacy rights beyond the fixed boundaries of established precedent. . .” Hodge v. Jones, 31 F.3d at 167.
In addition, it appears that there are legitimate, indeed strong, governmental interests served by including expired c. 209A orders in the Registry. According to the affidavit of Marie Kenny (“Kenny”), a Massachusetts State Police trooper with substantial experience in the field of domestic violence, a police officer responding to the scene of a domestic violence incident is in need of easily accessible and reliable information regarding the existence of any pending or prior restraining orders pertaining to a particular defendant or victim. This information, she states, is vital to the responding officer’s ability to quickly assess a particular situation for the appropriate law enforcement response that will serve to ensure the safety of all parties. The ability of a police office to access restraining order information by computer through the Registry provides the officer with reliable and current information regarding the status of any restraining order involving the parties. This eliminates the need for the officer to rely on the alleged victim for this information or the written records of a particular police department, which may not always provide the needed level of reliability and accuracy. Kenny states that this is of particular importance where the incident occurs outside of the jurisdiction where the order was issued, which is often the case. Finally, Kenny states that even after a restraining order has been dismissed, or otherwise is no longer in effect, it remains important for a police officer to have access to information regarding the issuance of prior restraining orders concerning the subject in question. “While the officer cannot take any action based upon the existence of a prior restraining order alone, the entry constitutes another piece of information which can assist the officer in making credibility assessments, can present a picture of the history between the two parties involved, and can help the officer determine a subject’s propensity for violence; all of which improves the officer’s ability to ensure his own safety, as well as that of the parties with whom he/she is dealing.” Kenny Affidavit 9.
*486 The affidavit of Gladys Aquino-Gaines (“Aquino-Gaines”), an eighteen-year veteran of the Boston Police Department and currently Commander of the Domestic Violence Unit, is to the same effect. She states, for example, that the availability of accurate restraining order information continues to be vital to police officers even after a restraining order has been dismissed, vacated, or otherwise expired. By providing the police officer wife an accurate picture of fee restraining order history in a particular relationship or of a particular subject, access to fee Registry data “enhances fee officer’s ability to ensure fee safety of all parties — -victim, officer, and alleged abuser.” Aquino-Gaines Affidavit 11. Aquino-Gaines concludes feat “(t]he value of an officer’s ability to quickly access data from fee restraining order registry cannot be overstated. It provides fee officer wife a better understanding, at fee scene, of who or what he/she is dealing wife, which significantly improves fee officer’s ability to respond to fee incident in an appropriate, fair and effective manner.” Aquino-Gaines Affidavit 13. It is apparent feat fee Registry may, in fact, serve a c. 209A defendant’s interest by protecting such person from improper arrest for alleged violation of an expired order. Cf. Hodge v. Jones, 31 F.3d at 166 (retention of unsubstantiated child abuse investigation reports serves a legitimate governmental interest because they could protect fee individual whose record is kept).
Plaintiffs have also not demonstrated a likelihood feat they will prevail on fee merits of their claim feat fee Registry is unconstitutional because it permits c. 209A orders, vacated after a trial, to be used in a subsequent c. 209A or c. 276, §58A hearing. The challenged portion of fee statute merely orders feat fee Registry be created, maintained, and “ made available” to law enforcement agencies and to judges considering c. 209A complaints. Chapter 276, §58A is not mentioned at all. As is evident from fee several affidavits submitted by fee defendants, the Registry appears to serve numerous legitimate state interests wholly apart from its potential use in a subsequent c. 209A or in a c. 276, §58A hearing. Plaintiffs have not sought a declaration feat c. 209A, §7 and c. 276, §58A are unconstitutional on their face or as applied.
Furthermore, nothing in fee challenged statutory section, or indeed in c. 209A, §7 or c. 276, §58A, purports to require a judge to take any action based upon review of Registry information disclosing a non-extended c. 209A order. Chapter 209A, §7 requires a judge to “review” Registry data. “The general pattern to be followed in G.L.c. 209A proceedings is both fair and reasonably clear. Whether a defendant’s constitutional rights have been violated will depend on fee fairness of a particular proceeding.” Frizado v. Frizado, 420 Mass. 592, 598 (1995). Chapter 276, §58A requires a judge to “take into account,” among numerous factors, a defendant’s history, if any, of c. 209A orders issued against him.[5] As wife any subsequent c. 209A proceeding against these plaintiffs, whether their constitutional rights will be violated would appear to depend on fee fairness of fee particular pretrial detention hearing.
Finally, whether there is an actual controversy as to fee use of fee Registry in a subsequent c. 209A or in a c. 276, §58A hearing is open to doubt. In order to obtain declaratory relief, a complaint must show feat fee challenged statute has “an immediate and significant effect on fee plaintiffs.” Bonan v. Boston, 398 Mass. 315, 320 (1986). “Declaratory judgment, in other words, ‘is a vehicle for resolving actual, not hypothetical, controversies.’ ” Boston Herald, Inc. v. Superior Court Dep't of the Trial Court, 421 Mass. 502, 504 (1995), quoting Quincy City Hospital v. Rate Setting Comm’n, 406 Mass. 431, 439 (1990). Whether plaintiffs will ever again face a hearing under c. 209A or whether they will ever face a pretrial detention hearing under c. 276, §58A appears to be highly speculative. “Parties are not entitled to decision upon abstract propositions of law unrelated to some live controversy... This rule applies wife special force where an adjudication is sought upon fee constitutionality of some statute . . . The possibility feat ... it might be advantageous for fee parties to have their rights determined in advance is not enough to call for fee rendition of a judgment, which fee future might show was of little practical value and merely settled a matter feat had become no more than a theoretical dispute.” Cole v. Chief of Police of Fall River, 312 Mass. 523, 526 (1942).
Harm to fee Public Interest
Because fee plaintiffs have not demonstrated either irreparable harm or a likelihood of success on fee merits, it is not necessary to consider fee harm, including fee harm to fee public interest, which granting the injunction would create.
ORDER
For fee reasons set forth above, it is hereby ORDERED that fee plaintiffs’ motion for a preliminary injunction be DENIED.
It is further ORDERED feat counsel for the parties shall meet within thirty days to discuss whether any discovery is necessary and to agree upon a timetable for drafting an agreed-upon statement of facts and, if appropriate, for filing cross-motions for summary judgment. Counsel shall appear on September 9,1996 at 2:00 p.m. for a status conference.

See G.L.c. 6, §172B.

G.L.c. 6, §167 defines “criminal offender record information” as “records and data . . .compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation or release . . . Criminal offender record information shall not include information concerning any offenses which are not punishable by incarceration.”

Chapter 276, §58A does not refer to the statewide domestic violence record keeping system. While the Registry may facilitate taking the defendant’s history into account, the requirement that such history be taken in account would apply to the plaintiffs even in the absence of the Registry.