NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-348                                        Appeals Court

COMMONWEALTH  vs.  JUAN DOE.[1]


No. 15-P-348.

Middlesex.     October 4, 2016. - December 28, 2016.

Present:  Cypher, Cohen, & Green, JJ.


Criminal Records.  Criminal Offender Record Information.
    Practice, Criminal, Record, Nolle prosequi.



Indictment found and returned in the Superior Court Department on June 10, 2010.

After the entry of a nolle prosequi, a petition to seal the record, filed on October 7, 2014, was heard by Kathe M. Tuttman, J.

J.W. Carney, Jr., for the defendant.
Jamie Michael Charles, Assistant District Attorney, for the Commonwealth.


COHEN, J.  Juan Doe appeals from an order of a judge of the

Superior Court denying his petition to seal his criminal record

in a case terminated by a nolle prosequi.  We infer from the

order that, in balancing the interests of the public and the

_____

[1] We allowed the defendant's motion to amend the case caption with a pseudonym.

defendant, as required by Commonwealth v. Pon, 469 Mass. 296 (2014), the judge may have relied upon a factor that is inconsistent with Pon's revised standard for discretionary sealing, and may have placed too much importance on another factor that was of limited concern in the circumstances. For those reasons, and for the additional reason that there has been a material change in circumstances since the petition was denied,[2] we vacate the order and remand for reconsideration.

Background. In June, 2010, Doe was indicted for murder in the first degree in connection with the death of his six month old son. The Commonwealth's theory was that the child had died as a result of abusive head trauma commonly known as shaken baby syndrome;[3] however, while the case was pending, it was learned that Doe's wife and her family had a previously unknown history of collagen vascular disease, a genetic condition that was relevant to determining the child's cause of death. This information was supplied to the prosecution and the medical

---

[2] Considerable time has elapsed since the petition was denied on January 20, 2015. Doe's appeal entered in this court on March 13, 2015, but was stayed until October 30, 2015, while a transcript of the motion hearing was prepared. Briefing was not completed until April 14, 2016. After denial of the defendant's application for direct appellate review, the case was argued to a panel of this court on October 4, 2016.

[3] As noted in two recent opinions of the Supreme Judicial Court, shaken baby syndrome has been the subject of heated debate in the medical community. See Commonwealth v. Millien, 474 Mass. 417, 418 (2016); Commonwealth v. Epps, 474 Mass. 743, 744 (2016).

examiner, who, in August, 2014, revised his ruling on the manner of death from "homicide" to "could not be determined."  Shortly thereafter, on September 18, 2014, the Commonwealth filed a nolle prosequi, stating that it could not "meet its burden of proving cause of death beyond a reasonable doubt when the revised ruling is considered in light of all the circumstances of this case."

On October 7, 2014, Doe filed a petition, pursuant to G. L. c. 276, § 100C, as amended through St. 2010, c. 256, §§ 131, 132, requesting discretionary sealing of the case record because it impaired his ability to obtain employment.  The Commonwealth opposed the petition, and after a nonevidentiary hearing, the matter was considered by the judge on affidavits and other written submissions.  At the hearing, the Commonwealth emphasized that its argument was "not that [the record] should never be sealed, but that this is not the right time."  On January 20, 2015, the judge issued a marginal order stating: "After non-evidentiary hearing.  Denied, for substantially the reasons set forth in the Commonwealth's Opposition and the supporting affidavit of [the assistant district attorney (ADA)].[4]  See Commonwealth v. Pon, 469 Mass. 296 (2014).  This

---

[4] An ADA for the Middlesex District appeared for the Commonwealth in the trial court.  At the close of the hearing on Doe's petition, the judge asked her to prepare an affidavit summarizing factual representations that she had made at the

order is <u>without</u> <u>prejudice</u> to the defendant to renew upon a showing of changed circumstances."  We reserve additional facts for later discussion in connection with the issues raised.

<u>Discussion</u>.  We consider whether the judge abused her discretion or committed error of law, using as our touchstone the Supreme Judicial Court decision in <u>Pon</u>, <u>supra</u>.  In <u>Pon</u>, the court concluded that "the records of closed criminal cases resulting in . . . dispositions [of dismissal or entry of a nolle prosequi] are not subject to a First Amendment presumption of access, and therefore that the sealing of a record under G. L. c. 276, § 100C, need not survive strict scrutiny."  <u>Id</u>. at 311.  The court therefore replaced the stringent standard set forth in <u>Commonwealth</u> v. <u>Doe</u>, 420 Mass. 142, 149-152 (1995), with a new standard more in keeping with the legislative policy reflected in the 2010 revision of the criminal offender record information (CORI) statutory scheme.[5]  That policy is to "provid[e] the public, and particularly employers and housing providers, with access to certain criminal records in order to make sound decisions while also enabling the sealing of criminal records where so doing would not present public safety concerns."  <u>Pon</u>, 469 Mass. at 303.

---

hearing about the relationship of Doe's case to another shaken baby case then pending in the same court.

[5] The pertinent statutory revisions are detailed in <u>Pon</u>, 469 Mass. at 303-308.

"Under G. L. c. 276, § 100C, second par., an individual may petition for sealing of a criminal case ending in a dismissal or entry of a nolle prosequi, as early as the time of the disposition or at any point thereafter." Pon, supra at 300-301. Such relief is warranted if "it appears to the court that substantial justice would best be served." Id. at 301, quoting from G. L. c. 276, § 100C. As reinterpreted in Pon, the "substantial justice" standard no longer requires a defendant to make a "specific showing 'that sealing [is] necessary to effectuate a compelling governmental interest,'" id. at 302, quoting from Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 511 (1st Cir. 1989); the standard is met if "good cause justifies the overriding of the general principle of publicity," Pon, supra at 313. In assessing whether a defendant has established good cause, the judge must balance the public interests at stake against the interests favoring privacy. Id. at 315. If, after balancing those interests, the judge determines that the defendant has overcome the common-law presumption of public access, the substantial justice standard will be satisfied. Id. at 314.

"Judges should begin by recognizing the public interests at stake. The public has a general right to know so that it may hold the government accountable for the proper administration of justice. . . . [E]ven [where] a case has not been prosecuted,

information within a criminal record may remain useful to the public." Id. at 315 (quotation omitted). "Next, judges . . . must recognize the interests of the defendant and of the Commonwealth[6] in keeping the information private. These interests include the compelling governmental interests in reducing recidivism, facilitating reintegration, and ensuring self-sufficiency by promoting employment and housing opportunities for former criminal defendants." Ibid.

While "judges may consider any relevant information in weighing the interests at stake, . . . [a]t a minimum, judges should evaluate the particular disadvantages identified by the defendant arising from the availability of the criminal record; evidence of rehabilitation suggesting that the defendant could overcome these disadvantages if the record were sealed; any other evidence that sealing would alleviate the identified disadvantages; relevant circumstances of the defendant at the time of the offense that suggest a likelihood of recidivism or of success; the passage of time since the offense and since the dismissal or nolle prosequi; and the nature of and reasons for the particular disposition." Id. at 316.

In the present case, because the judge's decision was for the reasons argued by the Commonwealth, but without prejudice to

---

[6] In context, the reference to the "Commonwealth" in this sentence refers broadly to State government and the populace, and not simply to the prosecution.

renewal, we may infer that the balancing process was influenced by one or both of two arguments rooted in circumstances that could change over time:  first, that Doe had not applied for work since the nolle prosequi and, hence, could not demonstrate that his record had disadvantaged him in obtaining employment; and second, that it was too early to terminate the public's access to Doe's court records, because defense counsel in another shaken baby syndrome case pending in the same county was expected to use evidence in Doe's case to impeach the credibility of an expert witness common to both cases.  We address each of these reasons in turn.

1.  Disadvantage in obtaining employment.  As explained in Pon, 469 Mass. at 316, a defendant seeking to seal his record "need not establish a risk of specific harm, [so long as] he . . . allege[s] with sufficient particularity and credibility some disadvantage stemming from CORI availability that exists at the time of the petition or is likely to exist in the foreseeable future."  "This can include, but is not limited to, a risk of unemployment [or] underemployment" (emphasis added). Id. at 316-317.  Far from requiring proof of unsuccessful job efforts, Pon instructs that "judges may take judicial notice of the well-known consequences for employment . . . from the existence of a criminal record."  Id. at 317.  Indeed, if a defendant first had to show that he had applied for work and was

rejected because of his criminal record, the benefits of sealing could well be lost.

In Doe's petition and accompanying affidavits, he indicated that he had spent the time since his child's death volunteering at his church and seeing to his wife's medical needs; he further alleged with particularity why he did not seek work before he filed his petition. A well-educated professional, Doe had a promising career at a university before his son's death; but, once his employer became aware of the charges against him, he was placed on leave and eventually terminated. After the nolle prosequi, he refrained from searching for a job because he thought it highly likely that any comparable position would require a CORI check, which would reveal that he had been charged with murder and that his case was terminated by means of a nolle prosequi.

Doe asserted that "nolle prosequi" is an obscure term that most likely would not be understood by an employer, and that the severity of the underlying murder charge would thwart his chances for consideration. He asserted further that, once obtained, his CORI record forever would remain in the files of any employment agency or recruiter he might approach. Doe expressed his belief that, in this respect, a CORI check presents a far more potent disadvantage to him than a general Internet search, which would reveal in plain terms that the

Commonwealth dismissed the case because it could not prove that any crime had been committed.

Doe's explanation was more than sufficient to be considered on its merits and, if credited, strongly weighed in favor of prompt sealing. To the extent that the judge's decision adopted the Commonwealth's argument that Doe could not demonstrate disadvantage in obtaining employment unless and until he actually tried and failed to secure a job, it was inconsistent with the revised standard for sealing set forth in Pon, and constituted an error of law.

2. Pending shaken baby syndrome case. Nothing in Pon suggests that the mere existence of a pending similar case is a justification for denying a petition to seal. To the contrary, the considerations identified in Pon are particularized to the defendant seeking to seal his record. That said, we acknowledge that the argument advanced by the Commonwealth, and apparently adopted by the judge, was more subtle; the Commonwealth contended that defense counsel in another shaken baby case, which was very much in the public eye, intended to use the facts in Doe's case to impeach a Commonwealth witness and, therefore, it was too soon to deny the public (and, especially, the media) access to records from Doe's case.

The factual basis for this argument is set out in the ADA's affidavit relied upon by the judge in her order. When Doe filed

his petition, a very high profile shaken baby syndrome case was pending in the same county and scheduled for trial in April, 2015. Defense counsel in that case had moved for discovery of a substantial amount of information about Doe's case, contending that it was potentially exculpatory. A hearing was held on the motion, at which Doe's counsel appeared and assented to the release of Doe's records so long as a protective order was imposed. The judge agreed with this course of action, entered a protective order, and directed the Commonwealth to provide records from Doe's case to the attorneys representing the other defendant. Among other things, the protective order required the Commonwealth and the other defendant to use pseudonyms when referring to Doe, his child, or any other biographical or personal information about the case.[7]

In both the Doe case and the other case, Dr. Alice Newton of Children's Hospital was an expert for the Commonwealth,[8] and, in both cases, it was her opinion that the child in question had died as a result of shaken baby syndrome. In light of the revised ruling of the medical examiner, and the filing of the

---

[7] The protective order also restricted access to the documents to the members of the other defendant's defense team and required advance judicial approval for the Commonwealth or the other defendant to make reference to or comment upon the content of any of the documents in court or in a court pleading.

[8] Dr. Newton has "written extensively on shaken baby syndrome." Commonwealth v. Millien, 474 Mass. at 423.

nolle prosequi in the Doe case, defense counsel in the other case was expected to use the Doe case to impeach Dr. Newton and suggest that she was prone to "rush to judgment." This strategy had not escaped the attention of the press. Media representatives were present at the hearing on the other defendant's discovery motion, and articles were published about how the other defendant might take advantage of the developments in the Doe case.

Whether, as the Commonwealth argued, the continued public interest in the Doe case that was being generated by the other case militated in favor of maintaining public access to Doe's file is a close question. On the one hand, the Commonwealth's decision to file a nolle prosequi in Doe's case while proceeding to trial on the other case plainly implicated the public's "general right to know so that it may hold the government accountable for the proper administration of justice." Pon, 469 Mass. at 315. On the other hand, Doe's case was receiving continued public attention only in juxtaposition to the other case, and it had been arranged that, in the context of the upcoming trial, the public would have the opportunity to hear the evidence and arguments as to whether the facts in the two cases were analogous or distinguishable, without revealing Doe's identity.

In these circumstances, we conclude that the judge may have placed too much weight on the pendency of the other case in denying Doe's petition.  Regardless, however, later developments have made the issue largely academic.  In the intervening period between the judge's order and the briefing of this case, the Commonwealth filed a nolle prosequi in the other case, as well.[9] The unusually high degree of public interest in that case, which brought attention to the Doe case, no longer stands in the way of sealing Doe's record.[10]

Conclusion.  We vacate the order of January 20, 2015, denying Doe's petition to seal his criminal record, and remand for further proceedings consistent with this opinion.

So ordered.

---

[9] Both Doe and the Commonwealth have called our attention to this fact, and we have been invited to take judicial notice of the status of the other case, which was resolved in September, 2015.

[10] Because of representations made by the Commonwealth at oral argument, we find it necessary to caution that, particularly in light of the passage of time, it would be contrary to the objectives of Pon if Doe's petition were held hostage because public interest in his case might be rekindled by other shaken baby cases involving Dr. Newton or otherwise. Furthermore, if there is ever a need to refer to the circumstances of the Doe case in the prosecution or defense of any pending or future case of this nature, a protective order like the one previously negotiated can and should be used.