NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReportersjc.state.ma.us

SJC-11542

COMMONWEALTH  vs.  PETER PON.[1]


Suffolk.     April 7, 2014. - August 15, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.[2]


Criminal Records.  Criminal Offender Record Information. Practice, Criminal, Record.  Constitutional Law, Access to criminal records, Privacy.  Privacy.



Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on October 22, 2007.

After dismissal, a petition to seal the record, filed on November 14, 2012, was heard by Robert E. Baylor, J., and a motion for reconsideration was considered by him.

The Supreme Judicial Court granted an application for direct appellate review.


Pauline Quirion (Susan Malouin with her) for the defendant.
Donna Jalbert Patalano, Assistant District Attorney, for the Commonwealth.
Rahsaan D. Hall, for Lawyers' Committee for Civil Rights and Economic Justice & another, amici curiae, submitted a brief.

---

[1] A pseudonym.

[2] Chief Justice Ireland participated in the deliberation on this case prior to his retirement.

Rebecca A. Jacobstein, for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

CORDY, J.  Under G. L. c. 276, § 100C, second par., inserted by St. 1973, c. 322, § 1, a former criminal defendant whose case resulted in the entry of a nolle prosequi or a dismissal may obtain discretionary sealing of his or her criminal record where a judge determines that "substantial justice would best be served" by sealing.  This provision, which is part of the over-all criminal offender record information (CORI) statutory scheme, is intended to enable such individuals to overcome the inherent collateral consequences of a criminal record and achieve meaningful employment opportunities.  See Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 384 (2003).  In 2010, the Legislature enacted extensive reforms to the CORI scheme, extending access to official CORI records to more employers, housing providers, and other organizations, for limited use, and simultaneously broadening the scope of the sealing provisions to enable more individuals to shield their records from public view.  See generally St. 2010, c. 256.  Given the demonstrable legislative concern in these reforms about the negative impact of criminal records on the ability of former criminal defendants to reintegrate into society and obtain gainful employment, particularly in an age of rapid informational access through the

Internet and other new technologies, it is apparent that the stringent standard for discretionary sealing we articulated nearly twenty years ago, in Commonwealth v. Doe, 420 Mass. 142, 149-152 (1995), no longer achieves the proper balance of interests. We granted the defendant's application for direct appellate review following the denial of his request for discretionary sealing of his criminal record under G. L. c. 276, § 100C, and now set forth a new standard for determining when substantial justice would best be served by the sealing of certain criminal records under G. L. c. 276, § 100C, second par.[3]

Background. The defendant was charged in October, 2007, with operating a motor vehicle while under the influence of alcohol (OUI) and leaving the scene of property damage following a motor vehicle accident. He admitted to facts sufficient for a finding of guilty. In September, 2008, a judge of the Boston Municipal Court Department ordered a continuance without a finding for one year with a rehabilitation program, pursuant to G. L. c. 90, § 24D, involving probation and a recommended forty-five day suspension of his driver's license. On October 22, 2009, a judge dismissed the case on the recommendation of the probation department.

---

[3] We acknowledge the briefs of amici curiae the Lawyers' Committee for Civil Rights and Economic Justice, and the Union of Minority Neighborhoods; and the Committee for Public Counsel Services, and the Boston Workers Alliance.

Three years later, in November, 2012, the defendant filed a petition to seal his criminal record, pursuant to G. L. c. 276, § 100C, due to its impact on his employment opportunities.[4] At a hearing on the petition, the Commonwealth objected to the sealing of the case because, it contended, the employment consequences articulated by the defendant were attributable to earlier, more serious charges and not to the OUI charge at issue. See note 34, infra. The judge denied the petition and further denied the defendant's motion for reconsideration. We granted the defendant's application for direct appellate review.

After oral argument before this court, the Commissioner of Probation sealed the defendant's criminal record pursuant to the administrative process set forth in G. L. c. 276, § 100A.[5]

_____

[4] In support of his petition, the defendant submitted an affidavit discussing his difficulties obtaining employment and his contributions to his community through extensive volunteer work, a memorandum of law, a proposed order, and letters of support and certificates of achievement. In particular, he emphasized his sobriety and clean criminal record since the incident. Because he lost his commercial driver's license due to the incident, he has been unable to resume his career as a driver. Despite applying for hundreds of jobs since 2007, he asserts that employers have declined to hire him due to his criminal offender record information (CORI).

[5] General Laws c. 276, § 100A, provides for mandatory sealing of "a record of criminal court appearances and dispositions" on petition to the Commissioner of Probation after a designated period of time if certain criteria are met. A request for sealing under § 100A must be granted if "the person's court appearance and court disposition records, including any period of incarceration or custody for any . . .

Accordingly, the question of whether the judge abused his discretion by denying the defendant's petition to seal his criminal record is moot because the defendant has attained his

record to be sealed occurred not less than five years before the request," in the case of a misdemeanor; not less than ten years before the request, in the case of a felony; or not less than fifteen years before the request, in the case of certain sex crimes.  Id.  The person must not have "been found guilty of any criminal offense" in Massachusetts, in any other State, or in a Federal court, within the preceding five years.  Id.  In addition, the person's record must "not include convictions of offenses" that are not eligible for sealing.  Id.  Convictions that are ineligible for sealing under § 100A include certain firearms offenses, see G. L. c. 140, §§ 121-131H; crimes against public justice, see G. L. c. 268; and crimes based on the conduct of public officials and employees, see G. L. c. 268A. See G. L. c. 276, § 100A.  In addition, persons who have been classified as a level two or level three sex offender may not have such offenses sealed.  G. L. c. 276, § 100A.  See G. L. c. 6, § 178K.

Most offenses that are eligible for sealing under G. L. c. 276, § 100A, after the requisite period of time has passed, will not appear in the CORI reports provided to most employers and housing providers, even if the individual has not yet filed a petition to seal them.  See 803 Code Mass. Regs. § 2.05(4)(a) (2012).  However, if the individual has been convicted of a subsequent offense, offenses that have not been sealed by an affirmative request of the individual will be visible to such employers.  Id.  In addition, convictions of murder, manslaughter, and certain sex offenses are visible to employers, even if they are eligible for sealing under § 100A, unless the individual has affirmatively requested sealing.  See id.

The defendant apparently met the criteria for § 100A sealing with regard to his OUI and accompanying property damage charges from 2007.  Although the Commonwealth contends on appeal that G. L. c. 276, § 100A, is unconstitutional, we decline to address this issue, as it is not properly before us.

desired relief through another process.[6]  See Ott v. Boston
Edison Co., 413 Mass. 680, 680 (1992); Blake v. Massachusetts
Parole Bd., 369 Mass. 701, 703 (1976).

Nonetheless, we exercise our discretion to revisit the
standard for discretionary sealing under G. L. c. 276, § 100C.
We may answer a question that is no longer important to the
parties "where the issue [is] one of public importance, where it
was fully argued on both sides, where the question [is] certain,
or at least very likely, to arise again in similar factual
circumstances, and especially where appellate review could not
be obtained before the recurring question would again be moot."
Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984).  The
sealing of criminal records is of public importance, and the
parties have addressed the merits of the current standard and
the need for clearer guidance.  Moreover, this issue undoubtedly
will arise again for offenders who seek to seal their criminal
records prior to the eventual sealing provided for in G. L.
c. 276, § 100A, and will again be rendered moot by the passage
of time inherent in the due course of litigation and appellate
review.  See Commonwealth v. Humberto H., 466 Mass. 562, 574
(2013), quoting Lockhart, supra.  Further, the issue has
"general application to the work of the trial court" and merits

_____

    [6] As far as we can discern from the record before us, all of
the defendant's past charges on his CORI record have now been
sealed.

discussion by this court "in order to promote the proper administration of justice." Doe, 420 Mass. at 143.[7,8]

Discussion. This case concerns the balance between the public's right of access to criminal court records and the State's compelling interest in providing privacy protections for former criminal defendants to enable them to participate fully in society. In particular, we must consider that balance in relation to the substantive and procedural standards that govern review of a petition for discretionary sealing under G. L. c. 276, § 100C, second par. The defendant asserts that our existing substantive standard does not adequately recognize the compelling interests in support of sealing, and asks that we

---

[7] Although we typically decline to decide constitutional questions unnecessarily, see Blake v. Massachusetts Parole Bd., 369 Mass. 701, 707 (1976), this case involves a question of interpretation of a Massachusetts statute, G. L. c. 276, § 100C, as it relates to a right under the First Amendment to the United States Constitution, and therefore does not signal a departure from our practice of judicial restraint in the realm of constitutional matters.

[8] Ensuring that the proper test is in place for review of a petition for discretionary sealing under G. L. c. 276, § 100C, is of particular importance where sealing is the only remedy for limiting access to certain classes of criminal records. "[W]here a sealing statute is applicable to a particular individual's circumstances, judges generally have no equitable authority to expunge court or probation records, because the Legislature has provided sealing as the exclusive remedy to protect the confidentiality of the records." Commonwealth v. Moe, 463 Mass. 370, 373 (2012), cert. denied, 133 S. Ct. 1606 (2013), and cases cited (discussing G. L. c. 276, § 100C, second par.). See Commonwealth v. Boe, 456 Mass. 337, 342-344 (2010).

adopt a more flexible standard that advances the legislative intent behind the 2010 CORI reforms.[9] The Commonwealth contends that our existing jurisprudence properly captures the balance of interests at stake and merits only minor clarification. It further asks this court to affirm the two-step hearing procedure articulated in Doe, 420 Mass. at 149-150, in order to ensure that adequate constitutional safeguards are afforded to the public. We conclude that a new substantive standard is necessary to achieve the legislative purpose of discretionary sealing and modify the procedure currently in place for reviewing petitions for sealing.

1. Substantive standard for sealing under G. L. c. 276, § 100C. a. Statutory framework and legislative history. Under G. L. c. 276, § 100C, second par., an individual may petition the court for sealing of a criminal case ending in a dismissal or entry of a nolle prosequi, as early as the time of the disposition or at any point thereafter.[10] Id. If "it appears to the court that substantial justice would best be served, the

---

[9] Specifically, the defendant contends that the standard set forth in Commonwealth v. Doe, 420 Mass. 142, 149-152 (1995), is unworkable, because it provides minimal guidance to judges and renders it nearly impossible for defendants to succeed on sealing petitions.

[10] The second paragraph of G. L. c. 276, § 100C, provides in full: "In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files."

court shall direct the clerk to seal the records of the proceedings in his files."  Id.

This provision was introduced in the 1970s shortly after the passage of the initial CORI Act (act), which authorized the creation of a comprehensive criminal justice information system that would afford limited access to court-based criminal records.  See G. L. c. 6, §§ 167-178B; St. 1972, c. 805.  See also St. 1973, c. 322, § 1, inserting G. L. c. 276, § 100C.  The act and its subsequent amendments attempted "to balance the public interest in having access to certain types of criminal justice information against the interest of personal privacy," Brant, Barron, Jaffe, Graceffa, & Wallis, Public Records, FIPA and CORI:  How Massachusetts Balances Privacy and the Right to Know, 15 Suffolk U. L. Rev. 23, 59-60 (1981), "recognizing that ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to . . . rehabilitation."  Globe Newspaper Co., 439 Mass. at 384.

Section 100C, and related sealing provisions in G. L. c. 276, §§ 100A and 100B, facilitated this balance by requiring or permitting the sealing of records of certain convictions, juvenile records, and nonconvictions, whose availability did not serve criminal justice purposes.  See G. L. c. 276, § 100A, inserted by St. 1971, c. 686; G. L. c. 276, § 100B, inserted by

St. 1972, c. 404; G. L. c. 276, § 100C, inserted by St. 1973, c. 322.[11]  See also Rzeznik v. Chief of Police of Southampton, 374 Mass. 475, 479 (1978); Brant, supra at 65 & n.292.  Once an individual's record is sealed, he or she may answer "no record" to any question regarding criminal history, and courts and the probation department must report that "no record" exists to anyone who inquires.  See What Is Sealing of a Record?, Massachusetts Criminal Offender Record Information Law § 5.2 (Mass. Cont. Legal Educ. 1st ed. 2012).  Sealing therefore removes some of the social and economic barriers created by a criminal record.  See Globe Newspaper Co., 439 Mass. at 384.

The substantive standard for discretionary sealing under § 100C, second par., where "substantial justice would best be served," is not defined in the statute, nor does the phrase lend itself to a clear definition.  See Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 601 (2010), S.C., 465 Mass. 297 (2013).  Where the words of the statute are ambiguous, we strive "to make it an effectual piece of legislation in harmony with common sense and sound reason" and consistent with legislative intent.  Wolfe v. Gormally, 440 Mass. 699, 704

---

[11] Other statutory provisions also provide for the sealing of certain charges or convictions of unlawful possession of a controlled substance or marijuana.  See G. L. c. 94C, §§ 34, 44; St. 1973, c. 1102.

(2004), quoting Massachusetts Comm'n Against Discrimination v. Liberty Mut. Ins. Co., 371 Mass. 186, 190 (1976).

Nearly twenty years ago, this court adopted an interpretation of "substantial justice" based on the determination of the United States Court of Appeals for the First Circuit that G. L. c. 276, § 100C, implicates concerns under the First Amendment to the United States Constitution and therefore requires a heightened burden of proof on the part of the defendant in order to overcome a constitutional presumption of public access. See Doe, 420 Mass. at 147-150, discussing Globe Newspaper Co. v. Pokaski, 868 F.2d 497 (1st Cir. 1989). In Pokaski, supra at 502-507, 510, the First Circuit concluded that because the right of public access guaranteed by the First Amendment was implicated by G. L. c. 276, § 100C, sealing under § 100C must survive a "traditional compelling interest/least restrictive means test." Id. at 505. To justify sealing, a defendant must make a specific showing "that sealing [is] necessary to effectuate a compelling governmental interest." Id. at 511. Given this heightened standard, the Pokaski court stated that sealing under § 100C could occur only in exceptional circumstances. See id. at 506 n.17, 507 n.18.

In Doe, 420 Mass. at 151, this court adopted the reasoning of Pokaski and required that, in order to obtain discretionary sealing under § 100C, the defendant must show "that the value of

sealing . . . clearly outweighs the constitutionally-based value of the record remaining open to society."  As part of this burden of proof, the defendant must establish that "he or she risks suffering specific harm if the record is not sealed."  Id. at 152.  See Pokaski, 868 F.2d at 507 n.18.  In conducting this balancing, the judge may consider "all relevant information," including "the reason for the nolle prosequi or dismissal," Doe, supra at 151, and whether "it is substantially probable that future opportunities are likely to be affected adversely by the existence of an arrest record," id. at 152.  The court also observed that the pool of defendants able to meet this burden would be small.  Id. at 149 n.7, citing Pokaski, supra at 507-508.

b.  Recent CORI reform.  Since our Doe decision in 1995, there have been significant changes in the availability of CORI records.  These changes indicate a strong legislative policy of providing the public, and particularly employers and housing providers, with access to certain criminal records in order to make sound decisions while also enabling the sealing of criminal records where so doing would not present public safety concerns.

The 2010 CORI reforms consisted of three major components relevant to the analysis here.  See Massing, CORI Reform -- Providing Ex-Offenders with Increased Opportunities Without Compromising Employers' Needs, 55 Boston B.J. 21, 22, 24 (2011).

First, the Legislature extended access to official CORI records to a broader group, creating several tiers of access. See G. L. c. 6, § 172; St. 2010, c. 256, § 21; 803 Code Mass. Regs. § 2.05 (2012). Any employer, housing provider, professional licensing authority, or volunteer organization can generally access the following CORI information for authorized purposes: pending criminal charges, including cases that have been continued without a finding, until they are dismissed; any convictions that are not yet eligible for automatic sealing under G. L. c. 276, § 100A; and any murder, manslaughter, and certain sex offense convictions, unless they have been sealed affirmatively under G. L. c. 276, § 100A, regardless of their eligibility for such sealing.[12] See G. L. c. 6, § 172 (a) (3), (b); 803 Code Mass. Regs. § 2.05(4)(a). Other employers, volunteer organizations, and local government agencies that work with vulnerable populations such as children, the elderly, or individuals with disabilities may access "all available criminal

---

[12] CORI reports available online to employers who do not work with vulnerable populations do not include any convictions eligible for sealing under G. L. c. 276, § 100A, or nonconvictions that would be eligible for discretionary sealing under G. L. c. 276, § 100C. See 803 Code Mass. Regs. § 2.05(4) (2012); Massing, CORI Reform -- Providing Ex-Offenders with Increased Opportunities Without Compromising Employers' Needs, 55 Boston B.J. 21, 23 (2011). If, however, an individual is convicted of a new crime, convictions eligible for sealing under § 100A will be visible unless the individual has officially requested sealing. G. L. c. 6, § 172 (a) (3); 803 Code Mass. Regs. § 2.05(4). See Massing, supra.

offender record information," which includes nonconvictions but implicitly excludes any sealed records. See G. L. c. 6, §§ 172 (a) (8), (10)-(16), (18), (23), 172C, 172E, 172G, 172H, 172I; G. L. c. 71, § 38R; 803 Code Mass. Regs. § 2.05(1), (3)(b). Members of the public may request conviction information on specific individuals within certain time limitations. See G. L. c. 6, § 172 (a) (4); St. 2010, c. 256, § 21; 803 Code Mass. Regs. § 2.05(5). Finally, criminal justice agencies,[13] firearms licensing authorities, and some government agencies that work with children are authorized to obtain all criminal offender record information, including sealed records. See G. L. c. 6, §§ 172 (a) (1) (criminal justice agencies and firearms licensing authorities), 172 (a) (9), (13) (children's agencies), 172B, 172F.

This expansion of access to official CORI records reflects a recognition of two important policy needs: that employers, housing providers, and licensing authorities have "legitimate business reason[s]" for wanting to know prospective employees' or recipients' criminal histories, and that making official CORI

---

[13] "Criminal justice agencies" are defined as "agencies at all levels of government which perform as their principal function, activities relating to (a) crime prevention . . ; (b) the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders; or (c) the collection, storage, dissemination or usage of criminal offender record information." G. L. c. 6, § 167.

records available more broadly would help steer employers and others away from reliance on potentially inaccurate sources of criminal history information made possible by technological advances since the initial passage of the CORI act (and since our decision in Doe).  See Massing, supra at 21-22.  Where criminal records are increasingly available on the Internet and through third-party background service providers, criminal history information that is available only briefly to the public through official means can remain available indefinitely, despite subsequent sealing or impoundment.  See Jacobs & Crepet, The Expanding Scope, Use, and Availability of Criminal Records, 11 N.Y.U. J. Legis. & Pub. Pol'y 177, 186-187, 203-208 (2008) (hereinafter Jacobs & Crepet); Massing, supra at 22, 24.  By providing an official avenue for criminal history information and offering incentives for use of official CORI,[14] the Legislature sought to balance a recognized need for broader access to criminal history information with a desire to minimize reliance on inaccurate or unauthorized criminal history information sources.  See Governor Patrick Signs Strong Anti-Crime Package to Protect Public Safety, Expand Job

---

[14] The reforms offer protection from negligent hiring claims based on failure to check other sources of criminal history, and from claims stemming from adverse employment decisions based on erroneous CORI.  See St. 2010, c. 256, § 21.  In contrast, if an employer relies on information from a private company, it does not receive protection from negligent hiring claims.

Opportunities, State House News Service, Aug. 6, 2010 (legislation "ensures law enforcement agencies, employers and housing providers have access to accurate and complete records in appropriate circumstances"); State House News Service, July 30, 2010 (statement of Sen. Cynthia S. Creem on Senate Doc. No. 2583) ("There is no accountability or reliability.  This bill would allow for a web-based program to give potential employers access to information that is accurate and consistent"); State House News Service, Nov. 18, 2009 (statement of Sen. Creem on Senate Doc. No. 2210) ("The bill encourages users to conduct their background checks through this system and not any other"). See also Cheney, Record Access Debate Juxtaposes Needs of Ex-Prisoners, Employers, State House News Service, July 27, 2009.

Second, the Legislature implemented procedural protections for defendants seeking employment by limiting when employers may ask about criminal history and requiring employers to share criminal history information with applicants.[15],[16]  See G. L.

---

[15] The reforms also improved the processes for correcting inaccurate information on a CORI record and filing a complaint for violations of the CORI statute, and created a self-auditing mechanism for individuals to receive reports on access to their records.  See G. L. c. 6, §§ 168, 175; St. 2010, c. 256, §§ 12, 21, 35.

[16] Employers may not ask about criminal history until after the initial written job application, unless such information is required by law for the particular job (the so-called "ban the box" provision).  See G. L. c. 151B, § 4 (9 1/2); St. 2010, c. 256, § 101; Massing, supra at 23.

c. 6, § 171A; St. 2010, c. 256, § 19. These protections were intended to minimize the discriminatory use of CORI information by employers and, again, promote accuracy of information where criminal history is considered. See Massing, supra at 23 (so-called "ban-the-box" provision "forces employers to consider ex-offenders' job qualifications on the merits, rather than automatically reject applicants who honestly answer the [criminal history] question in the affirmative").

Third, the Legislature made changes to the sealing provisions by enabling earlier automatic sealing under G. L. c. 276, § 100A, and expanding discretionary sealing to a broader class of nonconvictions. The shortened waiting periods for automatic sealing[17] reflect the consensus of recidivism research that "past convictions followed by a lengthy period of law-abiding conduct simply are not relevant in predicting future criminal activity or assessing credibility." Massing, supra at 23. See State House News Service, Nov. 18, 2009 (statement of Sen. Creem on Senate Doc. No. 2210) ("Research tells us that ex-offenders who don't commit crimes in these timeframes are just as likely to reoffend as anyone else"). Further, where

---

[17] The reforms shortened the waiting periods for eligibility for automatic sealing under G. L. c. 276, § 100A, from 15 years to 10 years for eligible felonies, and from 10 years to 5 years for eligible misdemeanors, and count time served on probation or parole toward the waiting period. See St. 2010, c. 256, § 128.

continuances without a finding previously had been excluded as a category of dismissed cases eligible for sealing under § 100C, their addition through the 2010 reform suggests that the Legislature specifically intended to make earlier sealing more widely available. See G. L. c. 276, § 100C, as amended by St. 2010, c. 256, § 131. These reforms, coupled with the procedural protections aimed at minimizing discrimination in the hiring process, strongly indicate that the Legislature was concerned with the collateral consequences of criminal records and sought to make sealing broadly available to individuals whose criminal histories or records no longer presented concerns of recidivism. See State House News Service, July 31, 2010 (statement of Rep. Christine Canavan on Senate Doc. No. 2583) ("This is a bill that's all about [a] second chance at what all of us want, a good job, a good wage, and the ability to raise a family"). Cf. In re Kollman, 210 N.J. 557, 568 (2012). In light of these expanded opportunities for sealing, the Legislature also granted criminal justice agencies immediate and automatic access to sealed and nonsealed CORI information, further indicating that the Legislature anticipated that more criminal records might be sealed following the reforms.[18] See

---

[18] Prior to the 2010 reforms, criminal justice agencies could see that a sealed record existed, but they needed to petition a court in order to view its contents. See Quirion &

G. L. c. 6, § 172 (a) (1); G. L. c. 276, § 100D; St. 2010, c. 256, §§ 21, 133.[19]

Together, these reforms reflect what has been articulated widely in criminal justice research:  that gainful employment is crucial to preventing recidivism, and that criminal records have a deleterious effect on access to employment.  See Massing, supra at 24.  See generally Pager, The Mark of a Criminal Record, 108 Amer. J. of Soc. 937 (2003).  Sealing is a central means by which to alleviate the potential adverse consequences in employment, volunteering, or other activities that can result from the existence of such records.  See G. L. c. 276, § 100A, fifth par.; G. L. c. 276, § 100C, fourth par.

Overall, the legislative history unmistakably suggests that the Legislature's intent in enacting the 2010 reforms was to

---

Russo, Sealing Criminal Records 8 (Mass. Cont. Legal Educ. 2009).

[19] Another justification for changes to the sealing provisions was the concern among legislators that allowing criminal records to be available without limit would impose further punishment than the underlying crimes merited.  See State House News Service, July 31, 2010 (statement of Rep. Eugene O'Flaherty on Senate Doc. No. 2583) ("The idea is to keep the time frame briefer and stop the further punishment of what you've already paid for"); State House News Service, July 30, 2010 (statement of Sen. Harriette L. Chandler on Senate Doc. No. 2583) ("These people have served their time but the stigma of jail time remains, and this bill will help them become full-fledged members of society again"); Office of Governor Deval Patrick, Patrick Administration Announces CORI Reforms, State House News Service, Jan. 11, 2008 (statement by Gov. Patrick) ("CORI was never intended to turn every offense into a life sentence").

recalibrate the balance between protecting public safety and facilitating the reintegration of criminal defendants by removing barriers to housing and employment.[20]  See House Speaker Robert A. DeLeo, House Passes Criminal Offender Record Information Reform, State House News Service, May 26, 2010; State House News Service, Nov. 18, 2009 (statement of Sen. Creem on Senate Doc. No. 2210) ("This bill strikes a great balance . . . between providing information that the public has a right to know and protecting people's privacy").

---

[20] Legislators emphasized the positive impact that the gainful employment of former criminal defendants can have on both preventing recidivism and benefiting the community at large.  See State House News Service, Nov. 18, 2009 (statement of Sen. Sonia R. Chang-Diaz on Senate Doc. No. 2210) ("No work makes a lot of people return to crime, drugs, prison"); State House News Service, May 26, 2010 (statement of Rep. O'Flaherty on House Doc. No. 4703) ("This proposal is grounded in facts, is smart on crime, and is protective of the population. . . . It is hard for individuals to assimilate back into neighborhoods when they are unable to get work").  This was also the governor's message in his advocacy on the issue.  See Governor Patrick Signs Strong Anti-Crime Package to Protect Public Safety, Expand Job Opportunities, State House News Service, Aug. 6, 2010 ("The best way to break the cycle of recidivism is to make it possible for people to get a job . . . . This legislation . . . helps people get back to work so they can support their families"); Massachusetts Exec. Order 495 (Jan. 11, 2008) ("[T]he Commonwealth has compelling interests in . . . empowering individuals to obtain gainful employment and housing").  In furtherance of this message, CORI reform was at times framed as an economic bill, stimulating employment and full economic participation by reducing barriers.  See Governor Patrick Signs Strong Anti-Crime Package to Protect Public Safety, supra; State House News Service, July 30, 2010 (statement of Sen. Cynthia S. Creem on Senate Doc. No. 2583); CORI Reform Supporters Push for Record Overhaul, State Capitol Briefs, State House News Service, June 3, 2009.

Given these clearly expressed legislative concerns regarding the deleterious effects of criminal records on employment opportunities for former criminal defendants, and the explicit expansion of opportunities for sealing to minimize the adverse impact of criminal records, it is apparent that the test articulated in Doe, 420 Mass. at 151, serves to frustrate rather than further the Legislature's purpose by imposing too high a burden of proof on the defendant and articulating unhelpful factors for the defendant to determine how to meet his or her burden.  Consequently, it is proper for us to revisit the meaning of "substantial justice" to ensure that we are interpreting the statute so as to give effect to present legislative intent.  See Wolfe, 440 Mass. at 704.

c.  New standard.  Given the extent to which Doe frustrates the legislative intent behind the recent reforms to the sealing provisions, it is necessary to begin our analysis at the same point at which the Pokaski court did:  asking whether the First Amendment is indeed implicated by G. L. c. 276, § 100C, second par.

"[A]lthough we give respectful consideration to such lower Federal court decisions as seem persuasive," Commonwealth v. Hill, 377 Mass. 59, 61 (1979), quoting Commonwealth v. Masskow, 362 Mass. 662, 667 (1972), "we are not bound by decisions of Federal courts except the decisions of the United States Supreme

Court on questions of Federal law." Commonwealth v. Montanez,
388 Mass. 603, 604 (1983). Because the United States Supreme
Court has yet to address whether the records of criminal cases
that have been dismissed or subject to nolle prosequi are
entitled to a First Amendment presumption of access, we are not
bound by any particular conclusion.[21]

We turn now to the two-step analysis set forth by the
Supreme Court to determine whether a First Amendment presumption
of access applies. See Press-Enterprise Co. v. Superior Court,
478 U.S. 1, 8-9 (1986) (Press-Enterprise II).

First, we "consider[ ] whether the place and process have
historically been open to the press and general public." Press-
Enterprise II, 478 U.S. at 8. At the core of the First
Amendment right of access is the criminal trial proceeding,
whose openness has been an "indispensable attribute of an Anglo-

---

[21] It is worth observing that neither the First Circuit nor
the District of Massachusetts has revisited the question of
access to the records of closed criminal cases for more than
twenty years. See Globe Newspaper Co. v. Fenton, 819 F. Supp.
89, 100-101 (D. Mass. 1993) (denial of "public access to court-
maintained alphabetical indices of defendants in closed criminal
cases without an individual judicial determination . . . that a
particular defendant's name must be sealed or impounded to serve
a compelling state interest" violates First Amendment). It is
indisputable that our society has changed drastically since
either we or the Federal courts have given great thought to the
consequences of sealing. Clearly, the issue is ripe for
revisiting, and we are not concerned that in so doing we are
disturbing well-settled jurisprudence that remains readily
applicable.

American trial" since time immemorial, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569 (1980) (plurality opinion), and whose value is ensuring the accountability of the judiciary to the public.  See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604-606 (1982).  Court records also historically have been accessible to citizens of the Commonwealth, for the same reason. Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004).  See Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 (2000); Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 546 (1977).  See also Roe v. Attorney Gen., 434 Mass. 418, 435 (2001), citing Globe Newspaper Co. v. Fenton, 819 F. Supp. 89, 91, 100-101 (D. Mass. 1993).  But see Cowley v. Pulsifer, 137 Mass. 392, 395-396 (1884) (certain papers filed in court not open to public inspection).  However, we have long recognized that some classes of court records should not be available for public review, such as records relating to cases brought in juvenile court, see Commonwealth v. Gavin G., 437 Mass. 470, 473-475 (2002), citing G. L. c. 119, §§ 60, 60A, and 65, G. L. c. 276, §§ 100 and 100B, and Police Comm'r of Boston v. Municipal Court of the Dorchester Dist., 374 Mass. 640, 652, 667 (1978), and that court records properly can be impounded and made unavailable for public inspection upon a showing of good cause, see Republican Co., supra at 223, and cases cited. Further, by statute, the records of certain completed criminal

cases may not be presumptively open for public view in the same way as the court room or the filings in an ongoing criminal prosecution. See St. 1972, c. 805 (introducing CORI statutory scheme limiting public access to criminal records); St. 1971, c. 686 (introducing statutory sealing of certain criminal records).

Importantly, the elements of the criminal judicial process that we have historically recognized as open to the press and the general public are not affected by the sealing of criminal records that occurs by way of G. L. c. 276, § 100C:

> "The public's ability to attend a criminal trial is not hindered. The media's right to report on the court proceedings is not diminished. The statute does not restrict the media's right to publish truthful information relating to the criminal proceedings that have been sealed. . . . [Indeed,] the public had a right of access to any court record before, during, and for a period of time after the criminal trial [until the request for sealing was granted]."

State ex rel. Cincinnati Enquirer v. Winkler, 101 Ohio St. 3d 382, 385 (2004). Accordingly, we conclude that the records of closed cases resulting in certain nonconvictions have not been open historically in the same sense as other, constitutionally cognizable elements of criminal proceedings.

Second, we consider "whether public access plays a significant positive role in the functioning of the particular process in question." Press-Enterprise II, 478 U.S. at 8, citing Globe Newspaper Co., 457 U.S. at 606. Here, we again

answer in the negative. There is no indication that the availability of records of criminal cases that have been closed after nonconviction "enhances . . . the basic fairness of the criminal trial and the appearance of fairness," as the openness of criminal trials does. Press-Enterprise II, supra at 9, quoting Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508 (1984) (Press-Enterprise I). The First Amendment presumption of openness stems in large part from the goal of "making the operations of government institutions subject to effective public scrutiny," see Fenton, 819 F. Supp. at 94-95, and the sealing of a small subset of criminal records after the cases have closed does not truly impede the functioning of this process. See Winkler, 101 Ohio St. 3d at 385. Sealed records are available to a number of entities and licensing commissions that, in the Legislature's determination, may have a particular need to know about such information. See G. L. c. 6, §§ 172-178B. Further, sealing does not compromise law enforcement or criminal justice efforts because such records remain available to criminal justice agencies and may be used as relevant in subsequent criminal proceedings. See G. L. c. 6, § 172; G. L. c. 276, § 100D. See also G. L. c. 276, §§ 100A, 100B. Therefore, sealed records remain available in ways that are needed to preserve the integrity of the processes at issue.

As the Press-Enterprise II Court noted, "history and experience shape the functioning of governmental processes." Press-Enterprise II, 478 U.S. at 9. Where "experience and logic" do not call for a First Amendment right of public access, the right does not attach. See id. It bears repeating that the class of records we are considering here is a narrow one: the records of closed criminal proceedings that resulted in a dismissal or an entry of nolle prosequi. We conclude that the records of closed criminal cases resulting in these particular dispositions are not subject to a First Amendment presumption of access, and therefore that the sealing of a record under G. L. c. 276, § 100C, need not survive strict scrutiny. This conclusion, although at odds with that of the First Circuit and the implicit rationale of some of its sister circuits,[22] is consistent with that of at least one other State supreme court, see State v. D.H.W., 686 So. 2d 1331, 1336 (Fla. 1996), and with

---

[22] According to a recent opinion by the United States District Court for the District of Maryland, every Federal circuit court except the United States Courts of Appeal for the Federal Circuit and the Tenth Circuit has applied the Press-Enterprise II test and concluded that the First Amendment right of public access applies to "documents entered into evidence at a criminal trial or filed in connection with at least some types of substantive pretrial criminal proceedings." Center for Constitutional Rights v. Lind, 954 F. Supp. 2d 389, 402 (D. Md. 2013). Of the cases cited for this proposition, however, only the First Circuit opinion, Globe Newspaper Co. v. Pokaski, 868 F.2d 497 (1st Cir. 1989), explicitly pertains to the sealing of court records in closed criminal cases. See Lind, supra at 402 n.11.

our own jurisprudence on impoundment, see, e.g., Republican Co., 442 Mass. at 222-223 (certain court documents not subject to First Amendment presumption may be impounded on lesser showing than required where constitutional right implicated).

Although these records are not subject to a First Amendment presumption, we conclude that they are subject to a common-law presumption of public access. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"); New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County, 462 Mass. 76, 82-83 (2012), and cases cited. See also Massachusetts Body of Liberties, art. 48 (1641) ("Every inhabitant of the Country shall have free liberty to search and review any rolls, records or registers of any Court or office"). Although this common-law presumption is of paramount importance, like its constitutional counterpart, it is not absolute. See Nixon, supra at 597-598; Sharpe, 432 Mass. at 604. Rather, it may be restricted on a showing of "good cause." New England Internet Café, LLC, supra at 83, citing Republican Co., 442 Mass. at 223.

Our conclusion that only a common-law presumption of public access applies enables us to depart from the exacting constitutional standard requiring narrowly tailored means toward

achieving a compelling government interest.  Consequently, we no longer will require that a defendant seeking sealing under G. L. c. 276, § 100C, second par., prove "that the value of sealing . . . clearly outweighs the constitutionally-based value of the record remaining open to society."  Doe, 420 Mass. at 151. Instead, we interpret the legislative directive that "substantial justice [will] best be served" by sealing to mean that the defendant must establish that good cause exists for sealing.  See G. L. c. 276, § 100C.  This is consistent with our case law regarding the appropriate substantive standard where a common-law presumption applies.  See, e.g., New England Internet Café, LLC, 462 Mass. at 78, 83; Republican Co., 442 Mass. at 223 ("The public's right of access to judicial records . . . may be restricted, but only on a showing of 'good cause'"), citing Sharpe, 432 Mass. at 604; Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, 403 Mass. 628, 631-632, 637-638 (1988), cert. denied, 490 U.S. 1066 (1989), and cases cited.[23]  Although a good cause analysis

---

[23] This test is analogous to the test employed for impoundment of certain court records, which raises similar concerns of privacy and public access.  See Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 n.22 (2000), quoting Rule 7 of the Uniform Rules on Impoundment Procedure (West 2000).  Where we have recognized a common-law presumption of access in a particular court record, we have employed a "good cause" standard to determine when impoundment is permissible.  See Republican Co. v. Appeals Court, 442 Mass. 218, 223 (2004).  See also New England Internet Café, LLC v. Clerk of the Superior

requires consideration of similar factors as an analysis where the First Amendment is implicated, see Republican Co., supra at 223 n.8; Sharpe, 432 Mass. at 605 n.24, the weight of the scales is more balanced, and the burden on the defendant somewhat lessened.  See New England Internet Café, LLC, supra at 83. Nonetheless, the basic framework remains the same:  sealing may occur only where good cause justifies the overriding of the general principle of publicity.[24]  Cf. Republican Co., supra at 223.

---

Court for Criminal Business in Suffolk County, 462 Mass. 76, 83-84 (2012) (impoundment requires showing of "good cause"); Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, 403 Mass. 628, 632 (1988), cert. denied, 490 U.S. 1066 (1989), quoting H.S. Gere & Sons, Inc. v. Frey, 400 Mass. 326, 329 (1987) (search warrant affidavits, entitled to common-law presumption, may be impounded "when justice so requires"; this requires judge to "balance the parties' privacy concerns against the general principle of publicity" to determine if "'good cause' to order the impoundment exists").  The broader scope of sealing presents somewhat different consequences and has an impact on different interests than impoundment does, and judges must be cognizant of these heightened consequences in conducting a good cause analysis.  See Pixley v. Commonwealth, 453 Mass. 827, 836 n.12 (2009) (discussing difference between sealing and impoundment).

[24] It is worth discussing briefly the first paragraph of G. L. c. 276, § 100C, although it is not at issue here.  That paragraph provides for mandatory sealing following the completion of a criminal case that ends in a finding of not guilty, a finding of no probable cause, or a failure to indict by a grand jury.  See id.  In Pokaski, 868 F.2d at 509-511, the United States Court of Appeals for the First Circuit held that this automatic, mandatory sealing of cases violated the First Amendment presumption of public access to court records with regard to cases ending in "not guilty" or "no probable cause" findings, but not with regard to cases ending in "no bill" from

a grand jury.  The Pokaski court indicated, however, that discretionary sealing of such cases would be constitutional where the judge has made "specific, on the record findings that sealing [is] necessary to effectuate a compelling governmental interest"  -- in other words, where the standard set forth in that opinion for G. L. c. 276, § 100C, second par., is satisfied.  See id. at 511.

Following Pokaski and our adoption of the Pokaski reasoning in Doe, 420 Mass. at 149, the District Court Department of the Trial Court determined that, with the exception of "no bill" cases, which were not disturbed by these decisions, it would seal criminal records under either paragraph of G. L. c. 276, § 100C, pursuant to the standard set forth in Doe.  See The Administrative Office of the District Court, Guide to Public Access, Sealing & Expungement of District Court Records, at 13, 13 n.42, 17, 42-44 (rev. Sept. 2013) (hereinafter Guide to Public Access).  Accordingly, rather than automatically sealing cases resulting in a finding of "not guilty" or "no probable cause," the District Court requires a defendant to file a petition for sealing and demonstrate that "the value of sealing . . . clearly outweighs the constitutionally-based value of the record remaining open to society."  Doe, supra at 151.  See Guide to Public Access, supra.  Sealing may occur only after a judge makes specific findings on the record that this standard has been met.  See Doe, supra at 152-153; Guide to Public Access, supra.  If the petition is granted, the District Court judge signs a form which the defendant may then provide to the probation department for sealing of his or her record there. See Guide to Public Access, supra.

We suspect that other trial courts in the Commonwealth also may be taking this approach of employing one process and substantive standard for sealing decisions, regardless of whether the case resulted in a finding of not guilty, a finding of no probable cause, a dismissal, or an entry of nolle prosequi.  See Guide to Public Access, supra.  Because sealing under G. L. c. 276, § 100C, first par., is not directly at issue in this case, we decline to extend our holding and the analysis we employ to that portion of the statute.  However, until the Legislature revisits the language of G. L. c. 276, § 100C, first par., or until the issue of its interpretation comes before us, we observe that the solution adopted by the District Court is a reasonable one, as long as it is modified consistent with our holding in this case:  that sealing may occur where good cause justifies the overriding of the general principle of publicity.

In assessing whether the defendant has established good cause for sealing his or her record, judges must balance the interests at stake. Cf. Republican Co., 442 Mass. at 223; Sharpe, 432 Mass. at 604-605, and cases cited. If, after balancing those interests, the judge determines that the defendant has done so, the substantial justice standard will be satisfied. This test achieves the necessary balance between the common-law presumption of access and the privacy interests at stake.[25]

Other jurisdictions with discretionary sealing statutes or judicial standards for sealing have adopted such balancing tests. See, e.g., Fla. Stat. Ann. § 943.045(19) (West Supp. 2014); Ohio Rev. Code Ann. § 2953.52(B)(2)(d) (West 2006 & Supp. 2014) (in determining whether sealing is appropriate, judge must consider statutory factors and "[w]eigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records"); Johnson v. State, 50 P.3d 404, 406 (Alaska Ct. App. 2002), quoting Anchorage v. Anchorage Daily

---

[25] It is only logical that the standard for the closure of a court record from public view after the completion of the criminal proceeding be a lesser one than that for closure of the criminal proceeding itself. Yet the standard articulated in Doe and Pokaski is essentially the same standard as articulated for closure of ongoing judicial proceedings in criminal cases. See, e.g., Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107 (2010), and cases cited.

News, 794 P.2d 584, 590 (Alaska 1990) ("In cases where there is no express exception to the state's disclosure laws, we balance 'the public interest in disclosure on the one hand, and the privacy and reputation interests of the affected individuals together with the government's interest in confidentiality, on the other,'" and in cases involving criminal records, court "balance[s] the public's right to know about an individual's past crimes against the convicted individual's right to privacy"); D.H.W., 686 So. 2d at 1336 ("policy of public access to old records must be weighed against the long-standing public policy of providing a second chance to criminal defendants who have not been adjudicated guilty"); In re Kollman, 210 N.J. at 577 ("judges will balance . . . [articulated] factors as they decide whether expungement [akin to sealing] serves the public interest in a particular case" and will "weigh the risks and benefits to the public of allowing or barring expungement"); Winkler, 101 Ohio St. 3d at 384-385 (discussing Ohio balancing test).

We turn now to what this balancing test will entail. Judges should begin by recognizing the public interests at stake. The public has a general right to know so that it may hold the government accountable for the proper administration of justice. See Nixon, 435 U.S. at 598; Pokaski, 868 F.2d at 502; George W. Prescott Publ. Co. v. Register of Probate for Norfolk

County, 395 Mass. 274, 279 (1985).  As this court acknowledged in Doe, 420 Mass. at 151, "[e]ven [where] a case has not been prosecuted, information within a criminal record may remain useful" to the public.

Next, judges evaluating a petition for sealing must recognize the interests of the defendant and of the Commonwealth in keeping the information private.  These interests include the compelling governmental interests in reducing recidivism, facilitating reintegration, and ensuring self-sufficiency by promoting employment and housing opportunities for former criminal defendants.  See DeLeo, House Passes Criminal Offender Record Information Reform, State House News Service, supra; Massing, supra at 23-24.  Where there is persuasive evidence that employers and housing authorities consider criminal history in making decisions, there is now a fully articulated governmental interest in shielding criminal history information from these decision makers where so doing would not cause adverse consequences to the community at large.[26]  See Globe

---

[26] The corollary that the sealing of nonconvictions does not have deleterious effects on the safety of the community is evidenced by the fact that, according to one national survey, the vast majority of States either permit the sealing of nonconviction information or do not make such information available to the public at all.  See Mukamal & Samuels, Statutory Limitations on Civil Rights of People with Criminal Records, 30 Fordham Urb. L.J. 1501, 1509-1510 (2003) (forty States permit expungement/sealing of some or all nonconviction criminal records, whereas only sixteen permit sealing of some

Newspaper Co., 439 Mass. at 384; Doe, 420 Mass. at 146, 151.
Given the evidence of the long-term collateral consequences of
criminal records, judges may take judicial notice that the
existence of a criminal record, regardless of what it contains,
can present barriers to housing and employment opportunities.
See Pokaski, 868 F.2d at 505-506; Fenton, 819 F. Supp. at 97.
See also Rasmusen, Stigma and Self-Fulfilling Expectations of
Criminality, 39 J.L. & Econ. 519, 519 (1996) ("A convicted
criminal suffers not only from public penalties but from stigma,
the reluctance of others to interact with him economically and
socially").  These concerns are heightened by the immediate and
effectively permanent availability of criminal history
information on the Internet.  See Jacobs & Crepet, supra.

With these interests in mind, we turn next to the factors
relevant to conducting this balancing, noting at the outset that
judges may consider any relevant information in weighing the
interests at stake.  See New England Internet Café, LLC, 462
Mass. at 92 ("'good cause' analysis is sufficiently flexible" to
allow consideration of any factors relevant to specific facts of
case); Globe Newspaper Co., petitioner, 461 Mass. 113, 122
(2011) (under good cause standard, judge must "consider and

conviction records).  See also United States Dep't of Justice v.
Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754 n.2
(1989).

balance the relevant factors that apply to a particular case").
At a minimum, judges should evaluate the particular
disadvantages identified by the defendant arising from the
availability of the criminal record; evidence of rehabilitation
suggesting that the defendant could overcome these disadvantages
if the record were sealed; any other evidence that sealing would
alleviate the identified disadvantages; relevant circumstances
of the defendant at the time of the offense that suggest a
likelihood of recidivism or of success; the passage of time
since the offense and since the dismissal or nolle prosequi; and
the nature of and reasons for the particular disposition.  We
consider each of these factors in greater detail.[27]

First, of central importance are the disadvantages the
defendant claims to face due to the availability of his or her
criminal record.  Although the defendant need not establish a
risk of specific harm, contrast Doe, 420 Mass. at 152, he or she
must allege with sufficient particularity and credibility some
disadvantage stemming from CORI availability that exists at the
time of the petition or is likely to exist in the foreseeable
future.[28]  This can include, but is not limited to, a risk of

---

[27] Although we have numbered the factors here for ease of
comprehension, this list is not exhaustive, and the factors
should be tailored appropriately to the particular circumstances
of each case.

unemployment, underemployment, or homelessness attributable to CORI availability; a demonstrated desire to pursue an occupation in which employers have access to nonconviction records; an impeded ability to participate in community or volunteer activities due to CORI availability; or the potential for reduced opportunities for economic or professional advancement due to CORI availability. It may also involve a demonstration that under- or unemployment, despite efforts to achieve gainful employment, has led the defendant to rely on public assistance to support him or herself, and his or her family.[29] As noted above, judges may take judicial notice of the well-known consequences for employment and housing prospects from the existence of a criminal record.

Second, evidence of rehabilitation should be considered in conjunction with the judge's assessment of whether sealing would

---

[28] As the facts of this case demonstrate, it may be difficult to attribute causation to nonconvictions where a defendant has convictions or other criminal matters on his or her CORI. It is unrealistic, however, to require a defendant to prove causation in any circumstance, and instead, we entrust the assessment of a plausible relationship between CORI availability and the alleged adversity, and the extent to which the alleged adversity may be relieved by the sealing of the particular nonconviction at issue, to the sound discretion of the judge.

[29] This consideration is particularly important where we have recognized a compelling State interest in ensuring that parents are able to support their children. See L.W.K. v. E.R.C., 432 Mass. 438, 446 (2000); Gray v. Commissioner of Revenue, 422 Mass. 666, 675 (1996), quoting Duranceau v. Wallace, 743 F.2d 709, 711 (9th Cir. 1984).

assist the defendant in overcoming the identified disadvantages. Employment attempts, community or civic engagement, successful completion of a probationary period or a sobriety or mental health treatment, lack of further contact with the criminal justice system, or other accomplishments may weigh in favor of sealing by demonstrating that the defendant bears a low risk of recidivism and a likelihood of success in future employment. See In re Kollman, 210 N.J. at 576-577.  This evidence of rehabilitation can begin from the date of the alleged offense, and need not be limited to the date of the disposition, given the significant passage of time that can occur between these events.[30]

Third, judges should consider other evidence on whether sealing would alleviate the identified disadvantages.  In this respect, it may be useful to consider the nature of the underlying crime, the stigma or stereotypes attached to it, and whether the defendant would be benefited by the sealing of the record without posing an additional safety threat to the

---

[30] This factor may place the defendant in somewhat of a "Catch-22" situation, in that sealing is intended to enable rehabilitation and reintegration where a criminal record impedes such progress.  Nonetheless, the defendant should be able to show some meaningful effort toward rehabilitation, even in the face of the barriers that the availability of his or her criminal record may impose.

community.[31]  Similarly, where the crime or the case was
newsworthy, the judge should consider whether the defendant
maintains any sense of privacy, such that sealing could still
have a positive impact.[32]

Fourth, consideration of the defendant's circumstances at
the time of the offense may prove instructive in assessing his
or her likelihood of recidivism or success.  For example,
significant criminal justice research suggests that younger
individuals have a great capacity for rehabilitation and should
not face the harshest consequences for their youthful
indiscretions.  See Diatchenko v. District Attorney for the
Suffolk Dist., 466 Mass. 655, 669-671 (2013).  On the other
hand, a history of prior criminal activity leading up to the
offense weighs against sealing, as it suggests a greater
likelihood of reoffense.

---

[31] It is no longer necessary, however, to consider the value
to law enforcement of keeping the record open to the public.
See Police Comm'r of Boston v. Municipal Court of the Dorchester
Dist., 374 Mass. 640, 656 (1978).  Under the revised CORI
framework, law enforcement have automatic access to sealed and
unsealed records.  See G. L. c. 276, § 100D.  See also G. L.
c. 6, §§ 167, 172 (a) (1).  Cf. State v. Noel, 101 Wash. App.
623, 628 (2000).

[32] Where the defendant is a public figure, a different
analysis may be necessary.  Cf. Sharpe, 432 Mass. at 611-612.
As those facts are not before us, we decline to discuss this
analysis further.

Fifth, the passage of time since the date of the offense and the date of the dismissal or nolle prosequi is an important factor that can weigh in favor of either interest. If sealing is sought immediately following the disposition, there may be concerns that the public has not had sufficient opportunity for access, and that the defendant may be likely to reoffend. With the passage of at least some time, however, the potential damage resulting from public availability is done, and the record may exist in the databases of third-party background check services, immune in practice (but not in law) from sealing. See Doe, 420 Mass. at 152; Calvert & Bruno, When Cleansing Criminal History Clashes with the First Amendment and Online Journalism: Are Expungement Statutes Irrelevant in the Digital Age?, 19 CommLaw Conspectus 123, 123-124 (2010). But see G. L. c. 93, § 54 (requiring background check services to update records). In addition, as the passage of time since the offense lengthens, the risk of recidivism lessens, and the case for enabling full-fledged participation in the workforce becomes even stronger and the burden on the public weaker.[33] See Police Comm'r of Boston, 374 Mass. at 658 (after time, maintenance of records "cannot be said to serve any valid law enforcement purpose").

---

[33] Once the defendant has reached the five- or ten-year marks from the date of the disposition, he or she likely will be eligible for automatic sealing under G. L. c. 276, § 100A.

Sixth, the nature of and reasons for the disposition, meaning whether the case was dismissed with prejudice, without prejudice, as part of an agreed-upon disposition, or as the result of a nolle prosequi, should be considered. Cf. N.J. Stat. Ann. § 2C:52-2(a)(2) (West Supp. 2014); Ohio Rev. Code Ann. § 2953.52(B)(2) (West 2006 & Supp. 2014). Defendants who were subject to wrongful accusations present the strongest case for sealing. See Commonwealth v. Roberts, 39 Mass. App. Ct. 355, 358 (1995) ("It is peculiarly unjust to saddle an individual with a record in a case that should never have been begun"). Dismissals after admission of guilt and periods of probationary conditions may require more evidence of demonstrated rehabilitation.

d. Application of new standard. For the purpose of providing guidance to the lower courts on how to apply the balancing test we announce today, we consider how the defendant in this case would fare under the test, recognizing that his record has already been sealed under G. L. c. 276, § 100A.

First, the defendant alleged specific difficulties in obtaining employment, including noting that he had applied to over 300 positions and obtained a small number of interviews, identifying specific employers who had rejected his applications and specific challenges he faced in obtaining employment or educational opportunities in his chosen field of social work.

He also alleged that because of his OUI charge, he was unable to resume his prior work as a commercial truck driver, and instead has had to pursue new career opportunities. The Commonwealth contends that the defendant's prior criminal history, portions of which at the time of his petition for sealing had not yet been sealed and which reflected long-past firearm and drug convictions, was the basis for his employment challenges.[34] The defendant's prior, serious criminal history weighs against sealing here, but it is notable that these convictions occurred over twenty years ago. We therefore do not find it dispositive that the defendant cannot demonstrate that the specific charges he seeks to seal are the ones that have prevented his employment, and consider his allegations sufficient to demonstrate meaningful employment disadvantages stemming from the availability of his record.

---

[34] The defendant pleaded guilty in 1995 to seven crimes arising out of two sets of indictments. These charges were for unlawful possession of a firearm, distribution of cocaine in a school zone, and criminal conspiracy. At the time of his petition for sealing of his OUI and property damage charges, the defendant indicated that portions of his CORI record had been sealed "administratively," presumably under G. L. c. 276, § 100A, but that his record still contained several dismissed charges from District Court, for which he would be petitioning for sealing separately. Although it appears that the defendant's record has since been sealed in full, it is unclear from the record before us whether the drug and firearms convictions from 1995 were sealed at the time of the instant petition, and it is further unclear what the defendant's criminal history is over-all. In conducting the balancing test we introduce here, it is important that the judge have a complete record of the defendant's criminal history.

Second, the defendant submitted significant evidence of rehabilitation, demonstrating his sobriety, his successful efforts to obtain at least occasional employment, his efforts toward self-improvement through enrollment in financial workshops, and his extensive volunteer work, which was corroborated by three letters of recommendation from individuals who work at the volunteer organizations.  The evidence on this factor weighs heavily toward sealing where the defendant seems clearly capable of contributing fully to society, and sealing would remove the barrier that prevents him from doing so.[35] This evidence, along with the fact that five years had passed between the date of the dismissal and the date of the defendant's petition, suggest minimal if any risk of recidivism.

The Commonwealth urges us to place great weight on the defendant's admission to sufficient facts for a finding of guilty on the OUI charge and the accompanying charge of leaving the scene of property damage, and the subsequent dismissal of these charges only after a continuance without a finding.[36]

---

[35] We are not persuaded by the Commonwealth's assertion that sealing would have no effect on his employment prospects because private background check services are available.  Were we to accept this argument, sealing would never be justified.  The operations of third-party providers who disregard sealing orders do not dictate our analysis.

[36] This disposition was previously excluded from the sealing provision of G. L. c. 276, § 100C.  See St. 2010, c. 256, § 131.

However, we are not persuaded that this factor outweighs the significant evidence of rehabilitation and disadvantages that may be remedied from sealing.  Accordingly, a judge properly could conclude that the defendant carried his burden of demonstrating that good cause exists to justify sealing.  The evidence presented by the defendant illustrates that the governmental interest of removing stigma to enable a rehabilitated individual to obtain gainful employment in his or her area of training or chosen profession would be well served here, and that there is little need to keep the defendant's record available for public inspection where so much time has passed.

2.  Procedure for discretionary sealing under G. L. c. 276, § 100C.  We turn finally to the question of the procedure courts should employ with regard to petitions for sealing under G. L. c. 276, § 100C.  In Doe, 420 Mass. at 149-150, we adopted a two-stage hearing process suggested in Pokaski, 868 F.2d at 507-508, for the resolution of petitions for sealing under G. L. c. 276, § 100C.

The Commonwealth asks this court to affirm the two-stage hearing process because it enables judicial efficiency by providing for summary dismissal of sealing requests without a prima facie case and reserves only the potentially meritorious petitions for full hearings conducted with notice to the public.

In contrast, the defendant asserts that a one-stage hearing process is a more effective case management tool that promotes judicial economy and access to justice and does not depart from any procedural requirement imposed by Doe and Pokaski. We agree with the defendant that an initial hearing may no longer be necessary, and accordingly modify the procedure articulated in Doe.

Under the procedural framework set forth in Doe, after a defendant files a petition for sealing under G. L. c. 276, § 100C, the defendant must appear for an informal hearing at which he or she must make a prima facie case for sealing.[37] Doe, 420 Mass. at 149. If a prima facie showing is not made, the petition is dismissed summarily. Id. If, however, the defendant makes an adequate showing, a second, more extensive hearing is held, with notice provided to the district attorney's office, the probation department, and the public. Id. at 150.

According to the parties, some courts have departed from this two-hearing process in the interest of judicial economy, opting instead to conduct a single, final hearing. See Survey of Greater Boston Area Court Procedures for Criminal Record Sealing, Mass. Legal Services (Oct. 22, 2013). Given that we announce today a lower standard for sealing and no longer

---

[37] No notice is provided to the public or any other interested party of this initial hearing. See Doe, 420 Mass. at 149-150.

require defendants to overcome the weight of a constitutional presumption, we conclude that an initial hearing may not be necessary. We are satisfied that eliminating the requirement of an initial hearing will go far in improving judicial efficiency and minimizing the burden on pro se litigants without compromising public access to such determinations or depriving defendants of an adequate opportunity to be heard.[38]

Where a defendant files a petition and accompanying documents setting forth facts that demonstrate good cause for overriding the presumption of public access to court records, a judge may determine on the pleadings whether a prima facie showing has been made.[39] If such a showing is made, the petition should proceed to a hearing on the merits. Notice of the hearing must be provided to the public and other interested parties, as detailed in Doe, 420 Mass. at 150.[40] See United States v. Kravetz, 706 F.3d 47, 59 (1st Cir. 2013) ("It is axiomatic that protection of the right of access suggests that the public be informed of attempted incursions on that right.

---

[38] Under this revised procedure, courts may hold a single sealing petition session, at which many such petitions are heard and resolved expeditiously.

[39] In some cases, where a prima facie case is not made on the papers, a preliminary hearing may be desirable. We leave this determination to the discretion of the motion judge.

[40] If a prima facie showing is not made, the sealing petition may be summarily dismissed on the pleadings. See Doe, 420 Mass. at 149.

Providing the public with notice ensures that the concerns of those affected by a closure decision are fully considered"); Globe Newspaper Co., 457 U.S. at 609 n.25, quoting Gannett v. DePasquale, 443 U.S. 368, 401 (1979) (Powell, J., concurring) (public and press must have opportunity to be heard on "question of their exclusion" where case-by-case assessment employed). After hearing the arguments and balancing the interests at stake, if the judge is satisfied that good cause merits sealing, the judge must make "specific findings on the record setting forth the interests considered by the judge and the reasons for the order directing that such sealing occur." Doe, 420 Mass. at 152-153. This requirement reflects the gravity of the decision and ensures that the common-law presumption of public access is afforded careful consideration.

Conclusion. The case is remanded for dismissal of the action as moot.

So ordered.